**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH WILLIAM MAYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-CV-6211 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| CHICAGO PARK DISTRICT, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHICAGO PARK DISTRICT'S**
**MEMORANDUM IN SUPPORT ITS MOTION TO DISMISS**

Defendant, Chicago Park District ("the Park District" or "Defendant"), by and through its attorney, Christina L. Rosenberg, respectfully submits the following memorandum in support of its motion to dismiss Plaintiff's Complaint ("Complaint" or "Compl.") pursuant to the Federal Rule of Civil Procedure 12(b)(6), and states as follows:

**INTRODUCTION**

Plaintiff's complaint attempts to use various legal maneuvers to strong-arm government entities including the Park District to permit him to bring his Guinea hog, Chief Wiggum, to various public spaces and events around Chicago. However, his efforts fail. Plaintiff's extensive complaint alleges four counts against various defendants including (1) denial of reasonable accommodations under the Americans with Disabilities Act ("ADA"); (2) violation of the Illinois Human Rights Act ("IHRA"); (3) deprivation of equal protection under the Fourteenth Amendment; and (4) deprivation of Plaintiff's First Amendment right to freedom of religion and violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In sum, Plaintiff seeks to have his Guinea hog designated as a service animal due to his bipolar disorder,

so that the hog may accompany him to various public spaces, including Park District beaches and parks. Plaintiff also claims that any denial of his right to bring the hog to public places violates his right to practice his religion, Satanism.

Two counts of Plaintiff's complaint are directed against the Park District: (1) Count I, Violation of Title II of the ADA, and (2) Count IV, Violation of Plaintiff's First Amendment Right of Free Exercise of Religion and RLUIPA. These two claims fail as a matter of law pursuant to F.R.C.P 12(b)(6). First, Plaintiff fails to establish a violation under Title II of the ADA since Plaintiff does not qualify as a disabled individual. Even if Plaintiff is deemed qualified, he is not entitled to reasonable accommodation for his Guinea hog, as the hog is not a service animal. As to Count IV, the Park District's rules for animals in parks do not target and were not created and/or enforced based on hostility to Plaintiff's claimed religion, Satanism, or to any other religion. Finally, RLUIPA does not apply here because the Park District did not act due to any landmarking or zoning law and Plaintiff does not own any Park District property or hold a property interest in any Park District property.

## FACTUAL BACKGROUND

Plaintiff alleges that he has been repeatedly denied the right to bring his Guinea hog to places of accommodation. (Compl. at ¶ 41). More specifically, Plaintiff claims that in 2016 and 2017, Plaintiff took his Guinea hog to North Avenue Beach and the path along Lake Michigan, while secured in a hauler. (*Id*. at ¶ 46). However, he was "aggressively ridiculed" to leave the beach by dog owners (*Id*.), and on occasions when the hog was present in dog-only areas of the parks, Plaintiff was repeatedly harassed by dog owners.[1] (*Id.* at ¶ 48). The hog is not even allowed

---

[1] Plaintiff does not claim any Park District employee ever ejected him from any Park District property; merely that other patrons, i.e. other dog owners, ridiculed him to leave the beach. (*Id.* at ¶¶ 46-48).

to be on the beach of designated bathing areas, (*Id.* at ¶ 47) and Plaintiff is prohibited from taking the hog onto non-dog beach areas. (*Id.* at ¶ 49). Plaintiff also alleges that, in 2017, he and his Guinea hog were kicked out of several parks and beaches maintained by the City of Chicago.[2] (*Id.* at ¶ 50). These properties include Millennium Park and Grant Park, where he was been kicked out of "The Bean" area and park because the pig is not a dog […]." (*Id.*) Plaintiff also alleges that he was ejected from the dog-friendly area of Montrose Beach after swimming because his Guinea hog is not considered a dog. (*Id.* at ¶ 51). Currently, Plaintiff's hog, Chief Wiggum, is not designated as a Service Animal. (*Id.* at ¶ 49).

The Park District Code (the "Code") governs the Park District including rules governing the Use of Parks. *See* Code, Ch. 7, §§ B.1, B.10, attached hereto as Exhibit 1, available at https://assets.chicagoparkdistrict.com/s3fs-public/documents/code/CPD-Code-Chpt-7.pdf. These rules include adhering to all State or Federal Laws, where "No person shall commit a violation of this Code, or local, state or federal laws or regulation while on Park District Property." *Id.* at § B.1. Ch. 7, § B.10 of the Code addresses "Animals in Park;" the relevant sections state as follows:

> No person owning […] any animal shall cause or permit such animal to enter or remain on Park District Property except:
>
> (1) Except in areas designated by the General Superintendent as "Dog Friendly Areas," a domestic animal may be brought into a park so long as such animal is continuously restrained by a leash not exceeding six feet in length […].
>
> (2) All persons entering Chicago Park District Dog Friendly Areas shall comply with applicable State of Illinois, City of Chicago, and Cook County laws and regulations […].[3]
>
> (3) No person should bring or lead […] other animal onto a bathing beach.

---

[2] The Park District admits that it owns and maintains Grant Park and other cited property, including North Avenue Beach, the Lakefront Trail, and Montrose Beach; however the City of Chicago owns and maintains Millennium Park.

[3] *See also* Chi. Mun. Code. §10-36-020, Animals Prohibited.

(5) Nothing in this Code shall prohibit a service animal assisting a person with a disability from entering or remaining at any location in the Park System […]. No person having the care or charge of […] other domestic animal shall permit such animal to enter […] of any drinking fountain, pool, lake, or pond in any park except at places designated or maintained therefore.

Finally, Plaintiff alleges that he suffers from bipolar disorder and that his Guinea hog provides Plaintiff "massage therapy on his hands and other body areas helping reduce the effect inducing anxiety and depression." (Compl. at ¶ 36). Plaintiff generally alleges that his Guinea hog provides him emotional support and companionship (*Id.* at ¶ 39) and that Plaintiff raised him to "perform tasks of a service animal, provide emotional support, and has included him in religious practices." (*Id.* at ¶ 32). Plaintiff started training his Guinea hog "to respond to his [bipolar disorder] attacks when still young." (*Id*. at ¶ 36). Plaintiff brings his Guinea hog when Plaintiff is outdoors and performing physical exercises. (*Id.* at ¶ 37.)

## ARGUMENT

### I.    Plaintiff Fails to Establish a Violation under Title II of the ADA

Plaintiff alleges the Park District violated Title II of the ADA by denying him a reasonable accommodation when the Park District refused to allow the Guinea hog to accompany Plaintiff to various Park District parks and beaches. First, Plaintiff fails to plead sufficient facts to establish he is a qualified individual with a disability. Even if Plaintiff is deemed qualified, his Guinea hog does not qualify as a service animal, and thus Plaintiff is not entitled to any accommodations under the ADA. Title II of the Americans with Disabilities Act prohibits public entities (which includes instrumentalities of state and local governments, like courthouses) from discriminating against qualified individuals with disabilities. 29 U.S.C. §§ 701 et seq., 42 U.S.C. § 12132. To prevail on a claim under either Title II of the ADA, Plaintiff must show that he is a qualified individual with a disability as defined by the statute, was denied the benefit of services Park District, and was

4

denied this benefit by reason, or solely by reason, of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a); *see also Ross v. Knight*, No. 1:03-CV-1700-SEB-VSS, 2006 U.S. Dist. LEXIS 89794, *14 (S.D. Ind. Dec. 8, 2006).

### A.     Plaintiff is Not a Qualified Individual with a Disability under the ADA

Plaintiff fails to plead sufficient facts to establish he suffers from a qualifying ADA disability. Under Title II of the ADA, the term "qualified individual with a disability" is defined in relevant part as meaning an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2). The term "disability" under the ADA is defined in pertinent part as meaning a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). Further, 29 C.F.R. § 1630.2(h)(1) defines physical or mental impairment, in part, as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

The phrase "major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning. 29 C.F.R. § 1630.2(i). The term "substantially limits" means either: (1) an individual is unable to perform a major life activity that the average person in the general population can perform; or (2) an individual is significantly restricted as to the condition, manner or duration under which the individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the population can perform that same major life activity. In deciding whether an individual is substantially limited in a major life activity, courts consider the nature and severity

of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j);

Here, Plaintiff merely pleads that he suffers from "bipolar disorder; a condition protected under the ADA" (Compl. at ¶ 36), and that he has been diagnosed with a "psychiatric condition" and "has cognitive impairments". (*Id*. at ¶ 129). However, Plaintiff fails to identify what cognitive impairments he suffers from, save for a reference to bipolar disorder and psychiatric condition. Plaintiff further states, "Plaintiff's impairments impair his major life activities, including breathing, concentrating and sleeping." (*Id.* at ¶ 130). This bare allegation fails to identify *how* his alleged psychiatric condition substantially limits his major life activities. *See Ross v. Knight,* No. 1:03-cv-1700-SEB-VSS, 2006 U.S. Dist. LEXIS 89795, *11 (S.D. Ind. Dec. 8, 2006) (the plaintiff was deemed not to be a qualified individual with a disability after failing to identify a substantial limitation of a major life activity based on his disability.) Thus, without more factual basis, Plaintiff fails to establish he is a qualified individual under the ADA.

### B. Plaintiff's Guinea Hog Does Not Qualify as a Service Animal

Even if this Court determines that Plaintiff is a qualified individual under the ADA, Plaintiff is not entitled to a reasonable accommodation because his Guinea hog does not qualify as a service animal. An individual can show he or she was excluded from a benefit provided by a public entity if that entity refused to provide a reasonable accommodation. *Riley v. Board of Commissioners*, No. 4:14-CV-063-JD, 2017 U.S. Dist. LEXIS 153737, *11 (N.D. Ind. Sep. 21, 2017). With a few exceptions, Title II requires public entities to permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go. 28 C.F.R. § 35.136(g). Service animals are defined as *dogs* that are individually trained to do work or perform tasks for people with disabilities. *Id*. at § 35.104. There are no requirements for the amount

or type of training that a service animal must undergo, nor the type of work or assistance that a service animal must provide, but the animal must be trained to perform tasks or do work for the benefit of a disabled individual. *Rose v. Springfield-Greene County Health Department*, 668 F. Supp. 2d 1206, 1214-15 (W.D. Mo. 2009) (citing *Access Now, Inc. v. Town of Jasper, Tenn*., 268 F. Supp. 2d 973, 980 (E.D. Tenn. 2003)). "Emotional support animals" are not considered service animals which fall under Title II's mandate. *Sykes v. Cook County Circuit Court Probate Division*, 837 F.3d 736, 740 (7th Cir. 2016) (citing 28 C.F.R. § 35.104). An animal that simply provides comfort or reassurance is equivalent to a household pet, and does not qualify as a service animal under the ADA. *See Baugher v. City of Ellensburg, Wash*., No. CV-06-3026-RHW, 2007 U.S. Dist. LEXIS 19073, *5 (E.D. Wash. Mar. 19, 2007).

First as Plaintiff admits, a Guinea hog is not a dog or a horse (Compl. at ¶¶ 16-17, 32, 85, 134). Therefore, Plaintiff's Guinea hog does not qualify as a service animal under the ADA. *See* 28 CFR § 35.104 ("Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition."). Second, even if Plaintiff's Guinea hog were a qualifying species, it would not qualify as a service animal because Plaintiff fails to plead sufficient facts about the work or tasks that are *directly related* to Plaintiff's claimed disability. 28 CFR § 35.104. Plaintiff merely asserts that his Guinea hog provides comfort and companionship. (Compl. at ¶¶ 36-37, 39). These broad allegations are insufficient to qualify the hog as a service animal. *See Rose*, 668 F. Supp. 2d at 1215-1216 (finding a monkey was merely providing comfort, generally assisted the plaintiff with daily life, but plaintiff failed to identify how tasks related to her disability and thus failed to qualify as a service animal); *Pruett v. Ariz*., 606 F. Supp. 2d 1065, 1071 (D. Ariz. 2009) (finding a chimpanzee that sat with the plaintiff when alone, retrieves food and drink for her on command, turns lights on for her, picks up remote controls and telephones,

sleeps with her, and gives her mental stimulation did not qualify as service animal because tasks were unrelated to diabetic disability); *Access Now, Inc. v. Town of Jasper*, 268 F. Supp. 2d 973, 980 (E.D. Tenn. 2003) (finding a horse was not a service animal but merely the plaintiff's pet and companion due to no facts supporting how it assisted and performed tasks for plaintiff to overcome or deal with an ADA disability; evidence of training to be well behaved and follow basic commands was immaterial). As such, Plaintiff's Guinea hog cannot be deemed a service animal, and Plaintiff's ADA claim against Park District fails.

## II. The Park District's Rules Governing Animals in Parks Do Not Infringe on Plaintiff's First Amendment Rights

The Park District's rules restricting animals in parks are not motivated by any religion, let alone Satanism; thus they do not infringe on Plaintiff's First Amendment rights.[4] Plaintiff claims that the rules restricting Plaintiff from bringing Chief Wiggum to Park District property infringes on Plaintiff's practice of Satanism. (Compl. at ¶¶ 102, 107, 109, 164-166). The Free Exercise Clause prohibits the government from "plac[ing] a substantial burden on the observation of a central religious belief or practice" without first demonstrating that a "compelling governmental interest justifies the burden." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). In *Employment Division v. Smith*, the Supreme Court held that neutral laws of general applicability do not run afoul of the Free Exercise Clause, even if these laws have the incidental effect of burdening a religious practice. 494 U.S. 872, 883 (1990).

In order to determine whether a law is "neutral", one must examine the object of the law.

---

[4] While Plaintiff does not specifically plead the Defendant Park District's rules substantially burden the exercise of his religion, unlike Plaintiff's claims against the City of Chicago (Compl. at ¶ 169), Plaintiff does generally plead that "Defendants' discrimination against Plaintiff and his Guinea Hog, Chief Wiggum, denies him his First Amendment Rights." (Compl. at ¶ 168). Thus, the Park District addresses this claim herein.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). A law is not neutral if "the object of the law is to infringe upon or restrict practices because of their religious motivation." *Id.* The related principle of "general applicability" forbids the government from "impos[ing] burdens only on conduct motivated by religious belief" in a "selective manner." *Id.* at 543, 531 ("Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied."). To answer that question, courts must look at available evidence that sheds light on the law's object, including the effect of the law as it is designed to operate, the "historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the [act's] legislative or administrative history." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007) (internal citations omitted).

Here, the Illinois General Assembly granted the Park District various powers in the Chicago Park District Act, 70 ILCS 1505. Section 7.02 states in relevant part, "The commissioners of the Chicago Park District, except as otherwise herein provided, may from time to time establish by ordinance all needful rules and regulations for the government and protection of parks, boulevards and driveways and other property under its jurisdiction [ …]." 70 ILCS 1505/7.02.

In furtherance of this conferred power, the Park District established its Code of the Chicago Park District, ("Code"), which is treated and considered as the comprehensive ordinance for the Park District. Code at Ch. 1, § B.1. Title and Scope of Ordinance. As identified, *supra*, the Park District has various rules relating to Animals in Parks. Code at Ch. 7, § B.10. These are facially neutral rules of general applicability that were passed for the health, safety, and maintenance of the bathing beaches, parks and paths of the Park District. There is nothing in the legislative record, legislative history, or enforcement of the Park District Code or Chicago Park District Act to

9

implicate any religious motivation or hostility for its creation or enforcement. Thus, Plaintiff's First Amendment claim fails as a matter of law.

**III.    The Religious Land Use and Institutionalized Persons Act ("RLUIPA") Does Not Apply**

Plaintiff alleges that the exclusion his Guinea hog from Park District property, and thus the exercise of his practice of Satanism, violates RLUIPA. RLUIPA's land use provisions establish a general rule that no state or local government shall impose or implement a land use regulation in a manner that imposes substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden . . . (A) is in furtherance of a compelling government interest; and (B) is the least restrictive means of furthering that compelling government interest. 42 U.S.C.A. § 2000cc(a)(1) (2002). The Definitions portion of the statute provides that under RLUIPA, "land use regulation" means a "zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C.A. § 2000cc-5(5). Under this definition, a government agency implements a "land use regulation" only when it acts pursuant to a "zoning or landmarking law", which limits the manner in which a claimant may develop or use property in which the claimant has an interest. *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961, 990 (N.D. Ill. 2003).

Here, Park District did not act pursuant to any zoning or landmarking law; instead, it was merely enforcing rules regarding park use. The Code of the Park District and its rules for animals in parks governs the use of its parks to preserve and maintain Park District property and protect Park patrons thereof, not for zoning or landmarking. Further, Plaintiff does not own Park District

property or hold a property interest in Park District property. Thus, it is clear that Plaintiff's RLUIPA claim does not apply and fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Chicago Park District respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6) and for such further relief as the Court deems just and appropriate.


Date:  February 1, 2019

Respectfully Submitted,

/s/Christina L. Rosenberg

Heather L. Keil - Senior Counsel
Christina L. Rosenberg - Counsel
Michael Alexandrou - Legal Intern
Chicago Park District
541 N. Fairbanks, 3rd Fl.
Chicago, IL 60611
312.742.4609 / 4720
312.742.5328 (fax)
Heather.Keil@chicagoparkdistrict.com
Christina.Rosenberg@chicagoparkdistrict.com
CPDlawnotices@chicagoparkdistrict.com