**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KENNETH MAYLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18 C 6211** |
| | ) | |
| **CHICAGO PARK DISTRICT;** | ) | **Judge Harry D. Leinenweber** |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **NATURAL RESOURCES, DIVISION** | ) | |
| **OF PARKS AND RECREATION;** | ) | |
| **Acting U.S. Attorney General** | ) | |
| **MATTHEW G. WHITAKER, in his** | ) | |
| **official capacity; COOK COUNTY** | ) | |
| **ANIMAL CONTROL; and** | ) | |
| **CITY OF CHICAGO;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS**

Defendant City of Chicago (the "City"), by its attorney, Edward N. Siskel, Corporation

Counsel for the City of Chicago, hereby submits the following memorandum in support of its

motion to dismiss Plaintiff's Complaint and Jury Demand ("Complaint" or "Compl.") with

respect to the City.

**INTRODUCTION**

The factual content of Plaintiff's complaint—replete with references to Satanism, animal

slaughter, and breeds of swine—is interesting, to say the least. The legal issues arising from the

claims asserted against the City, however, are far less intriguing: the claims plainly lack merit.

Plaintiff's core grievance is that various private and public establishments have prohibited him

from bringing his guinea hog, Chief Wiggum, on their premises. Specifically, with respect to the

City, Plaintiff complains that he is prohibited from bringing Chief Wiggum into Millennium

1

Park, which the City owns and operates. He asserts that the City's ban on animals in the park violates the Americans with Disabilities Act ("ADA") and the Illinois Human Rights Act ("IHRA"). According to Plaintiff, Chief Wiggum should be considered a "service animal" entitled to accommodation under those statutes because the hog performs tasks that mitigate the effects of Plaintiff's bipolar disorder. In addition, Plaintiff asserts that the City's ban on animals in the park denies him the ability to practice his Satanic religion and therefore violates his free-exercise rights under the First Amendment and the Religious Land Use and Institutionalized Person Act ("RLUIPA").

Plaintiff's claims against the City are meritless: his IHRA claim (Count 2) should be dismissed for lack of subject-matter jurisdiction, and the remaining claims should be dismissed for failure to state a claim. The Court lacks subject-matter jurisdiction over the IHRA claim because a plaintiff must exhaust his administrative remedies, which include filing a charge with the Illinois Department of Human Rights, prior to filing a civil action under the IHRA. And the Court should dismiss Plaintiff's ADA claim because, as Plaintiff himself concedes, pigs are not considered service animals under the ADA, and pig owners are therefore not entitled to any accommodation under the Act. Plaintiff's religion-based claims also fail. Plaintiff alleges in conclusory fashion that the City has rules banning hogs from public places, but fails to identify any such rules or regulations except for the City's ban on all animals (except for service animals) in Millennium Park. But because that rule is a valid and neutral law of general applicability, the City has not violated the free exercise clause. And because the rule is not a land use regulation, it does not implicate RLUIPA. Plaintiff's entire complaint should be dismissed with respect to the City.

## FACTUAL BACKGROUND

Plaintiff makes allegations about how various individuals and entities have treated him and his guinea hog, Chief Wiggum, but the complaint contains only a handful of specific allegations concerning the City.   Plaintiff alleges that the City has rules banning hogs from public places, Compl. ¶ 169, though he does not cite any particular rule in his complaint. Plaintiff alleges that, in 2017, he and Chief Wiggum were "kicked out of several parks and beaches maintained by the City of Chicago." *Id.* ¶ 50; *see also id.* ¶ 46 ("The City of Chicago grants a discriminatory entitlement to the beach to dog owners."); *id.* ¶ 47 ("The city of Chicago . . . prohibit[s] Plaintiff rom taking Chief Wiggum into the Lake because he is not a dog.").   Yet Plaintiff identifies only one park maintained by the City, Millennium Park, and he admits elsewhere in the complaint that it is the Chicago Park District that "is responsible for Chicago's fields, parks, beaches, and indoor and outdoor swimming pools." *Id.* ¶ 4.   The City does maintain Millennium Park, and the City's duly promulgated rules governing the park do prohibit park visitors from bringing any animals into the park.   Specifically, those rules prohibit visitors from "bringing *any* animals into the Park other than service animals, as defined by Federal and State law."   Millennium Park Rules – 2016 Update, *available at*:

https://www.cityofchicago.org/content/dam/city/depts/dca/Millennium%20Park/mprulesupdated. pdf (emphasis added).[1]

Plaintiff alleges that he has been diagnosed with bipolar disorder, *see* Compl. ¶ 31, and that he practices the religion of Satanism, *see id.* ¶ 94.   According to Plaintiff, Chief Wiggum

---

[1] The Court may take judicial notice of municipal rules and regulations.  *See Driebel v. City of Milwaukee*, 298 F.3d 622, 631 n.2 (7th Cir. 2002).  While Plaintiff refers to the City's "rules banning hogs from public places," Compl. ¶ 169, the City is not aware of any general bans of that sort and therefore presumes that Plaintiff's reference in this paragraph is to the ban on animals in Millennium Park.

plays a role both in the treatment and mitigation of his psychiatric disorder and the practice of his religion. Plaintiff alleges that Chief Wiggum has been trained to provide massage therapy on Plaintiff's hands and other areas of his body to reduce the effects of anxiety and depression. *Id.* ¶ 36. Plaintiff also alleges that he exercises outdoors with Chief Wiggum to mitigate his psychiatric condition and that Chief Wiggum provides Plaintiff with emotional support and companionship. *Id.* ¶¶ 37, 39. With respect to Chief Wiggum's alleged role in Plaintiff's religious practices, Plaintiff states that Chief Wiggum is a symbol of his Satanic faith, *id.* ¶¶ 38, 42, 99, that Chief Wiggum has performed in religious rituals, *id.* ¶ 108, and that Plaintiff must bring Chief Wiggum to public places in order to "practice compassion in accordance with [Plaintiff's] religious beliefs," *id.* ¶ 109.

## ARGUMENT

I.     **The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's IHRA Claim**

Plaintiff asserts that "Defendants' refusal to treat Chief Wiggum as a service animal violates the IHRA." *Id.* ¶ 150. The City denies that Chief Wiggum qualifies as a service animal under the IHRA, but even if Plaintiff's assertion were correct, he has failed to exhaust his administrative remedies under the Act. The IHRA "contains comprehensive procedures to investigate and adjudicate alleged [civil rights] violations." *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 5 (1985); *see also* 775 ILCS5/7A-102 (setting forth procedures, including requirement to file charge with the Department of Human Rights). And the Act provides that no court shall have jurisdiction over alleged civil rights violations "other than as set forth in this Act." 775 ILCS 5/8-111. That provision "divests courts, both state and federal, of jurisdiction to hear state law claims of civil rights violations unless those claims are brought under the IHRA." *Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc.*, No. 03 C 0607, 2005 WL 43178, at *2 (N.D. Ill. Jan. 10,

2005); *see also Talley v. Washington Inventory Serv.*, 37 F.3d 310, 312–13 (7th Cir. 1994); *Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 819–20 (N.D. Ill. 2013). Plaintiff does not allege that he has pursued his IHRA claim in accordance with the procedures set forth by the Act, and his claim must therefore be dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies. *See Talley*, 37 F.3d at 313.

## II. Chief Wiggum Is Not A Service Animal Under The ADA

Plaintiff maintains that the City is required to recognize Chief Wiggum as a service animal under the ADA and that its failure to do so constitutes discrimination on the basis of disability. *See* Compl. ¶¶ 133, 137. Setting aside the question of whether the alleged tasks Chief Wiggum performs for Plaintiff are those of a "service animal,"[2] or whether Plaintiff has actually alleged that he qualifies as a disabled individual under the ADA,[3] his claim fails at the outset because—as Plaintiff himself acknowledges in the complaint—the definition of "service animals" for ADA purposes is limited to dogs and miniature horses. *See* 28 C.F.R. § 35.104 ("Service animal means any *dog* that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals . . . are not service animals for the purposes of this definition.") (emphasis added); *id.* § 35.136(i)(3) (public entity's obligations with respect

---

[2] As Defendant Cook County Animal Control argues in the memorandum supporting its motion to dismiss, Plaintiff fails to allege that Chief Wiggum was trained to perform tasks related to his alleged disability. *See* Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Compl. (Dkt. 22) ("Animal Control Mem.") at 7–8.

[3] As Defendant Chicago Park District argues in the memorandum supporting its motion to dismiss, Plaintiff does not allege sufficient facts to establish that he is a "qualified individual with a disability" under the ADA. *See* Def. Chicago Park District's Mem. in Supp. of its Mot. to Dismiss (Dkt. 49) at 5–6.

5

to permitting use of service animals also apply to use of miniature horses).[4]  *See also* Compl. ¶

85 ("In July 2010, DOJ revised its Title I and II rules, stating that only dogs can be service

animals."); *id.* ¶ 134 ("Service animals [are] defined as dogs or miniature horses trained

individually to do work or perform tasks for people with disabilities.").

Because he is a pig, Chief Wiggum is decidedly not a service animal under the ADA, and

thus the City is not in violation of the ADA for failing to extend "service animal" status to

Plaintiff's hog.  *See, e.g.*, *Rose v. Springfield-Greene Cty. Health Dep't*, 668 F. Supp. 2d 1206,

1216 (W.D. Mo. 2009) (disallowing monkey to enter establishment not a violation of the ADA

because monkey was not a service animal under the ADA), *aff'd sub nom. Rose v. Cox Health*

*Sys.*, 377 F. App'x 573 (8th Cir. 2010).[5]  The cases concerning service animals that Plaintiff cites

in his complaint are not to the contrary.  Those cases involve claims brought under statutes other

than the ADA, *see Velzen v. Grand Valley State Univ.*, 902 F. Supp. 2d 1038 (W.D. Mich. 2012)

(analyzing claims brought under Fair Housing Act, Rehabilitation Act, and state civil-rights

statute); *Janush v. Charities Hous. Dev. Corp.*, 169 F. Supp. 2d 1133 (N.D. Cal. 2000) (Fair

Housing Act claim), or involve an animal that ADA regulations expressly name as a possible

service animal, *see Anderson v. City of Blue Ash*, 798 F.3d 338, 354 (6th Cir. 2015) (case

---

[4] When the Department of Justice ("DOJ") implemented the rule defining service animals, it explained the rationale for its definition:  The agency determined that "limiting the number and types of species recognized as service animals will provide greater predictability for State and local government entities as well as added assurance of access for individuals with disabilities who use dogs as service animals."  App'x A to 28 C.F.R. Pt. 35, Guidance to Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Gov't Servs. (eff. Mar. 15, 2011).  DOJ therefore "decided to limit . . . coverage of service animals to dogs, which are the most common service animals used by individuals with disabilities."  *Id.*

[5] Even if pigs could qualify as service animals, animals that merely provide comfort or emotional support for individuals with psychiatric conditions (so-called "emotional support animals") are not considered service animals under the ADA.  *See generally* App'x A to 28 C.F.R. Pt. 35, Guidance to Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Gov't Servs. (eff. Mar. 15, 2011) (explaining decision to exclude emotional support animals from definition of service animals).

concerning use of miniature horse as service animal). Because valid federal regulations make clear that a pig cannot be a service animal under the ADA, Plaintiff's ADA claim against the City necessarily fails.

### III. The City Has Not Violated Plaintiff's Free-Exercise Rights Under The First Amendment Or RLUIPA

Plaintiff alleges, in conclusory fashion, that his religious beliefs "compel him to bring Chief Wiggum with him to events, including on public property such as beaches and parks." Compl. ¶ 165. And he asserts that the City's "rules banning hogs from public places" substantially burden the exercise of his religion. *Id.* ¶ 169. As noted above, Plaintiff does not identify the specific City rules he is challenging, but the City presumes he is referring to the rule banning all animals (except for service animals) from Millennium Park. Even assuming— despite the lack of supporting allegations in the complaint—that the City's rules do substantially burden the exercise of Plaintiff's religion, the rule does not violate the First Amendment or RLUIPA. The rule poses no free-exercise problem under the First Amendment because it has long been the case that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990). The City's animal ban in Millennium Park is a general law concerning animals in the park and is neutral with respect to religion—that the rule "proscribes conduct" (bringing a pig into a park) that Plaintiff's religion allegedly prescribes (bringing a pig to events in the park) does not mean it violates the First Amendment.[6]

---

[6] Plaintiff notes in his complaint that the City regulates the ability of retail food establishments to designate certain spaces as "dog-friendly areas," though he does not explain how that stray

It is true that facially neutral laws may be invalid under the First Amendment if the context of their enactment and operation reveals that they are actually based on government hostility toward religion. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (ban on slaughter of animals for ritual sacrifice unlawful targeted practice of Santeria religion); *see also Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (state commission's finding of discrimination where baker announced religion objection to creating wedding cakes for same-sex marriages was unlawfully based on hostility to religion). But although Plaintiff refers to *Church of the Lukumi Bablu Aye* and *Masterpiece Cakeshop* in his complaint, he alleges no facts suggesting that the City's general ban on animals in Millennium Park (or its regulation of retail-food establishments that have dog-friendly areas) is based on hostility to Satanism or any other religion. *Cf. Masterpiece Cakeshop*, 138 S. Ct. at 1729–30 (noting, for example, state discrimination commissioner's comments referring to religious justifications for a practice as "one of the most despicable pieces of rhetoric people can use" and relying on evidence of differential treatment of baker's religious objection as compared to different objections made by others); *Church of the Lukumi Babalu Aye*, 508 U.S. at 534 (noting, among other things, that the ordinance at issue made express reference to "sacrifice" and "ritual" and that ordinance text was drafted in a way such that "almost the only conduct subject to [the ordinance] is the religious exercise of Santeria members").

There are obvious reasons, unrelated to religion, why the City would enact those rules,

---

allegation connects to any of his legal claims. *See* Compl. ¶ 31. *See also* Municipal Code of Chicago ("MCC") § 4-8-031 (ordinance regulating dog-friendly areas at retail food establishments) (available at http://library.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/municipalcodeofchicago?f=templates$fn=default.htm$3.0$vid=amlegal:chicago_il). To the extent Plaintiff is bringing a First Amendment challenge to MCC § 4-8-031, the challenge fails because that law is also neutral with respect to religion.

such as concern for the health and safety of park visitors and restaurant customers, or to ensure proper maintenance of Millennium Park. There is no remotely plausible basis for inferring governmental hostility to religion in this case. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (inferences made at motion-to-dismiss stage must have "plausible grounds"). Plaintiff has therefore failed to state a First Amendment claim.

Nor does this case implicate RLUIPA, which restricts the government's ability to "impose or implement a land use regulation" in a manner that burdens a person's religious exercise. 42 U.S.C. § 2000cc(a)(1).[7] The Act defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." *Id.* § 2000cc-5(5). None of the allegations in the complaint concern Plaintiff's use or development of his land, let alone any zoning or landmarking law restricting such use, and thus RLUIPA is not applicable in this case.

Plaintiff cannot state a free-exercise claim under either the First Amendment or RLUIPA, and Count 4 of the complaint should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiff's Complaint and Jury Demand against the City pursuant to Rules 12(b)(1) and 12(b)(6) and grant the City such further relief as the Court deems just and appropriate.

Date:   February 1, 2019                    Respectfully submitted,

---

[7] The Act also protects the religious exercise of individuals residing in or confined to an institution, 42 U.S.C. § 2000cc-1, but that portion of the statute is obviously inapplicable here.

EDWARD N. SISKEL
Corporation Counsel for the City of Chicago

By:    /s/ Justin Tresnowski_____
          Assistant Corporation Counsel

JUSTIN TRESNOWSKI
City of Chicago, Department of Law
Constitutional and Commercial
      Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-4216