IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**KENNETH MAYLE,**

    **Plaintiff,**                                                                       No. 18 CV 6211

v.                                                                               Judge Leinenweber

**CHICAGO PARKS DISTRICT, et al.,**

    **Defendants.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ILLINOIS DEPARTMENT OF NATURAL RESOURCES' MOTION TO DISMISS

### INTRODUCTION

Plaintiff Kenneth Mayle ("Plaintiff"), pro se, hereby files this Memorandum in Opposition to the Motion to Dismiss filed by Defendant Illinois Department of Natural Resources, Division of Parks and Recreation ("IDNR" or "Defendant"). IDNR mischaracterizes and interprets allegations in the Complaint in its favor rather than in the light most favorable to Plaintiff, and misinterprets the standards of proof and application of law under the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101, et *seq.*, ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008. For these reasons and the reasons below, the Court should deny Defendant's Motion to Dismiss in its entirety.

### STATEMENT OF JURISDICTION

This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, the ADA, 42 U.S.C. §§ 12101, and 42 U.S.C. § 1983. *et seq. Compl.* ¶ 1. Plaintiff also brings constitutional claims under the First and Fourteenth Amendments, and Religious Land Use and Institutionalized

Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. Supplemental jurisdiction over the state law claim is proper under U.S.C. § 1367. *Compl.* ¶ 1.

## FACTUAL BACKGROUND

Plaintiff is a resident of Cook County, where all of the events of his Complaint took place. *Compl.* ¶ 3. The IDNR is the public agency responsible for maintaining state parks and waterways in Cook County. It maintains 8,000 acres of green spaces in Cook County, and is responsible for Chicago's fields, parks, beaches, and indoor and outdoor swimming pools. *Compl.* ¶ 4. The IDNR has a formal policy designating some areas of its parks as "dog friendly" under its dog-friendly area (DFA) program. *Compl.* ¶29. Dog friendly areas of parks and beaches are areas where dogs can run and play off leash. This includes areas of two beaches, Belmont Harbor and Montrose and many gated areas in various parks. *Compl.* ¶29. In addition, some bars and restaurants are given DFA licenses on "patios." In practice this may mean on the sidewalk or other areas. *Compl.* ¶30.

Plaintiff is a person with a disability for purposes of the ADA because he was diagnosed with bipolar disorder. *Compl.* ¶31, 26. Plaintiff sued because his domesticated pig, Chief Wiggum (also known as Boarphomet), has been banned from many places of public accommodation despite the fact that he performs tasks of a service animal. *Compl.* ¶33. Chief Wiggum is Guinea Hog who Plaintiff raised to perform tasks of a service animal, including providing emotional support. *Compl.* ¶32. Chief Wiggum was trained to do massage therapy on Plaintiff's hands and other body areas helping reduce the effect including anxiety and depression. *Compl.* ¶36. Plaintiff's physician recommended physical exercise as another way to treat his conditions. Plaintiff started biking and pulling Chief Wiggum behind the bike in a hauler. *Compl.* ¶37, 39. Plaintiff was able to derive two benefits from Chief Wiggum during these excursions: providing service animal assistance during anxiety attacks related to bipolar excursions, and providing emotional support and companionship.

2

*Compl.* ¶39-40. Plaintiff also found religious significance in these excursions. See *Compl.*38, 42 (regarding the pig's importance to the local Satanist community, including Plaintiff.)

When Plaintiff went cycling with Chief Wiggum, he often attempted to use IDNR properties. As he explained in the Complaint,

> In 2016 and 2017 Plaintiff has taken Chief Wiggum on the North Avenue Beach and path along Lake Michigan. Despite Chief Wiggum secured within a hauler. At multiple times Plaintiff was aggressively ridiculed to leave the beach area by dog owners. The City of Chicago grants a discriminatory entitlement to the beach to dog owners. This is adverse to the plaintiff's interest in equally using the beach.
>
> *Compl.* ¶46.

Plaintiff could not take the pig into Lake Michigan or on the dog areas of the beach, nor could the pig use any of the designated bathing areas. *Compl.* ¶47. The pig was physically attacked by dogs and plaintiff verbally attacked by their owners. *Compl.* ¶48. Since the pig is not designated as a service animal, he is prevented from using properties maintained by the IDNR. In Plaintiff's complaint, he details several incidents of being kicked out of IDNR parks, being asked to leave convenience stores, being refused entry to Six Flags, and being evicted by landlords because of the presence of Chief Wiggum. See *Compl.* ¶51-63.

In addition to Chief Wiggum's role as service animal and emotional support animal, the pig was central to Plaintiff's religious practices. *Compl.* ¶38, 42.

## STANDARD OF REVIEW

A. **Failure to State a Claim Under 12(b)(6)**

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. *Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990).

Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" *Id.* at 143-44 (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)); see also *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989).

A Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. *Id.* § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). *Id.* § 1357, at 304, 310.

The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The court must read the complaint as a whole, accept all of the factual allegations as true, and make all reasonable inferences in the nonmoving party's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309-10 (2007) (internal citations omitted). A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A Wright & Miller, supra § 1357, at 344-45.

Except in certain specific cases, a plaintiff's complaint must only satisfy the "simplified pleading standard" of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A motion to dismiss under Rule 12(b)(6) may be granted only when "it

4

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

    **B. Lack of Jurisdiction Under 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a complaint if the court lacks subject matter jurisdiction to hear the case. Among other things, a defendant may challenge the court's subject matter jurisdiction based on the plaintiff's lack of standing. For the purposes of constitutional standing, a plaintiff must show: (1) that he or she has suffered an injury in fact –that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury fairly is traceable to the challenged action of the defendant, rather than the result of an independent action of some third party not before the court; and (3) that it is likely the injury will be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## ARGUMENT

**I. ACCEPTING ALL FACTUAL ALLEGATIONS IN THE COMPLAINT AS TRUE, AND MAKING ALL REASONABLE INFERENCES IN PLAINTIFF'S FAVOR, DEFENDANT CANNOT SHOW THAT THERE IS NO SET OF FACTS UPON WHICH PLAINTIFF CAN ESTABLISH HE HAD A DISABILITY, AND THAT THE IDNR FAILED TO ACCOMMODATE HIS DISABILITY.**

The sections of the federal regulations applying to service animals for public entities and for places of public accommodations (Title II and Title III of the ADA, which can be found at 28 C.F.R. § 35.104 and 28 C.F.R. § 36.104, respectively) both define service animal in the same way: any dog individually trained to do work or perform tasks for the benefit of an individual with a

disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Miniature horses were later added as a service animal in certain circumstances. 28 CFR § 36.302(c)(9)(i) and 28 C.F.R. § 35.136(i). The definition of service animal includes psychiatric service animals, but excludes comfort animals. See 28 C.F.R. 35.136, as amended, 75 Fed. Reg. 56164, 56177, 56191-56195 (Amended September 15, 2010) The work or task performed by the service animal has to be directly related to the handler's disability and may include:

> Assisting individuals who are blind or have low vision with navigation and other tasks; alerting individuals who are deaf or hard of hearing to the presence of people or sounds; providing nonviolent protection or rescue work; pulling a wheelchair; assisting an individual during a seizure; alerting an individual to the presence of allergens; retrieving items such as medicine or the telephone; providing physical support and assistance with balance and stability to individuals with mobility disabilities; and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors.

The inquiries that can be made when a person arrives at a public entity or at a place of public accommodation with an alleged service animal are limited by 28 C.F.R. § 35.136(f) (Title II) and 28 C.F.R. § 36.302(c)(6) (Title III). The only two permissible questions are whether the animal is required because of a disability and what work or task the animal has been trained to perform. Further, under these same regulations, those inquiries cannot be made if it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability.

Under the ADA, a service animal must be allowed into the place of public accommodation or into the public entity. Plaintiff challenges the ADA regulations on two bases. First, he contends that the breed restriction is unconstitutional because he cannot keep a horse on his property, and he is allergic to dogs. This means that Plaintiff, despite his disability, can never use a service animal under the law. This is a violation of his constitutional rights. Plaintiff argues that the ADA should require places of public accommodation to permit him to bring his Guinea Hog, or other reasonably-sized swine, if he meets the standards for a reasonable accommodation under the ADA.

6

Second, he contends that there should be no distinction between service animals and emotional support animals for purposes of public accommodation. Animals providing emotional support, well-being, comfort, or companionship are still performing important tasks for people with disabilities.

The IDNR Motion to Dismiss improperly summarizes the ruling of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (See Doc 55 at 3). With the advent of *Twombley*, the Supreme Court articulated a heightened pleading standard which adopts a more rigorous reading of Rule 8(a)(2). The Court's ruling applies when a plaintiff makes *conclusory* statements in a complaint. The Court held that a complaint alleging an antitrust conspiracy under Section 1 of the Sherman Act was required to allege sufficient facts to support a *plausible*, not merely *conceivable*, claim for relief. This simply requires a plaintiff to plead "sufficient factual matter… to state a claim that is plausible on its face." *Id.* Complaints must plead enough factual matter to raise a reasonable expectation that discovery will actually reveal evidence of the cause of action. The key takeaway from *Twombley* is that it removed the word "conceivable" and replaced it with "plausible." The majority explained that plaintiffs must now show something less than a probability, yet more than mere possibility in order for a statement to be well-pled.

Consideration of the Plaintiff's as a whole demonstrates that it meets the requirements established under the *Twombley* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) "[A] complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This standard is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Here, the

Complaint presents a detailed recitation of Plaintiffs' assertions that more than satisfies the pleading requirements, to wit:

Plaintiff's complaint discusses Chief Wiggum in three contexts: as a service animal, as an emotional support animal, and as a symbol of Plaintiff's religious practices. Defendant misrepresents Plaintiff's claim as being *only* about Wiggum as an emotional support animal, and concluding therefore that emotional support animals are not covered by the ADA. See Doc 55, at 5. Although Plaintiff does argue that emotional support animals should qualify for protection under the ADA, see *Compl.* ¶82-84, that is not his only argument. Plaintiff argues that the breed restriction for service animals is unconstitutional. *Compl.* ¶85-90. Plaintiff argues that animals other than dogs and miniature horses should be classified as service animals for purposes of the ADA. *Compl.* ¶ 63-68, 70-81. As Plaintiff explains, he is allergic to dogs, therefore cannot have a service dog. *Compl.* ¶ 89. Plaintiff cites the federal government's regulations regarding the use of mini-horses as service animals, which allows mini-horses "to accompany a person with a disability to any place that members of the public is allowed to go such as restaurants, theatres, retail shops, grocery stores, etc." *Compl.* ¶ 89, citing 28 CFR § 35.136. Plaintiff states that it is not feasible nor desirable for him to train and maintain a mini-horse. *Compl.* ¶ 90. He argues that the breed restriction – which permits people with disabilities to watch a movie or go to the beach with a mini-horse, but not with a domesticated pig – cannot even satisfy a rational basis test, let alone the more stringent test of "rational basis plus" or quasi-suspect classifications. (Disability is an immutable characteristic, yet the Supreme Court has so far rejected the notion of granting people with disabilities suspect classification. See *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985)).

**A. Plaintiff's ADA Claim That the Pig Could Be a Service Animal is *Plausible* Under Case Law and Regulations**

The IDNR cannot show that Plaintiff could not succeed on his ADA claim. As Plaintiff noted in his Complaint ¶ 24-26, courts have taken the position that animals other than service dogs can be a reasonable accommodation for a disability. See *Anderson v. City of Blue Ash*, --- F.3d ----2015 WL 4774591 (6th Cir., 2015). (Significant factual disputes existed about whether ADA and FHAA both allowed child to have a service horse at her home; consent decree allowed the girl to have the horse despite city's law classifying horses as farm animals). J*anush v. Charities Housing Development Corporation*, 169 F.Supp.2d 1133 (N.D. Ca., 2000) (Plaintiff's request to possess two birds and two cats is a reasonable accommodation request); and *Velzen v. Grand Valley State Univ.*, 902 F. Supp. 2d 1038 (W.D. Mich. 2012) (Plaintiffs have pleaded sufficient facts establishing violation occurred of the Rehabilitation Act by university housing's failure to accommodate her disability by failing to allow an emotional support guinea pig, and that this behavior may have been deliberately indifferent; case settled, with university agreeing that plaintiffs could have the guinea pig at any university apartment.) In addition, the U.S. Department of Housing and Urban Development (HUD), also takes a different viewpoint than the Department of Justice. HUD specifically states, "[w]hile dogs are the most common type of assistance animal, other animals can also be assistance animals." (FHEO Notice: FHEO-2013-01 at 2).

A review of the entire Complaint demonstrates that the Complaint in no way relies upon mere legal conclusions but contains a detailed factual account of Defendants' illegal practices which establish their liability for the violations cited therein, and contains a legal justification for his assertion that the pig could be a service animal, and denial of the pig as a service animal is a violation of Plaintiff's right to a reasonable accommodation. Therefore it is wholly "plausible" that Plaintiff's domesticated pig should be considered a service animal by the IDNR.

B. **The Land Trust Doctrine Compels the IDNR to Ensure Plaintiff's Right to Use Public Lands**

The Public Trust Doctrine or Land Trust Doctrine, with its origin in Roman civil law, is an essential element of North American wildlife law. The Doctrine establishes a trustee relationship of government to hold and manage wildlife, fish, and waterways for the benefit of the resources and the public. Fundamental to the concept is the notion that natural resources are deemed universally important in the lives of people, and that the public should have an opportunity to access these resources. Another way of conceptualizing the Doctrine is that it applies to a particular natural resource, such as navigable and tidal waterways, and operates to deny states any power to convey these "trust resources," to which they typically hold title, to private persons or entities if the transfer would diminish or defeat traditional public access to and use of those resources.

The modern application of the Land Trust Doctrine has evolved into an affirmative power, supplemental to and consistent with traditional police powers, to promote public rights in the use of resources. In *Illinois Central Railroad v. Illinois*, 146 U.S. 387 (1862),. the Supreme Court announced unequivocally that lands underlying navigable waterways are titled to states "in trust" for the citizens' commercial and recreational use. The Court said that "[t]he State can no more abdicate its trust over property in which the whole people are interested . . . than it can abdicate its police powers . . . ."The decision reaffirmed that each state in its sovereign capacity holds permanent title to all submerged lands within its borders and holds these lands in public trust.

The IDNR therefore has a responsibility to maintain its properties in accordance with this Doctrine, ensuring that it preserves the natural resources for the enjoyment of all of its citizens, including those with disabilities, such as Plaintiff.

10

## II. PLAINTIFF HAS ALLEGED AN INJURY IN FACT, WHICH IS TRACEABLE TO THE IDNR'S CONDUCT AND WHICH WOULD BE REDRESSED BY A FAVORABLE DECISION, AND THEREFORE HAS STANDING TO SUE

IDNR's Rule 12(b)(1) motion makes two false allegations: that Plaintiff merely expresses "generalized grievances" and that he has suffered no injury in fact. Doc 55 at 3-4. The IDNR alleges Plaintiff did not "connect the dots" enough to meet the Seventh Circuit's standard in *Swanson v. Citibank*, N.A., 614 F.3d 400 (7th Cir. 2010). The Defendant alleges Plaintiff cannot identify a park where he was banned or barred from bringing Chief Wiggum.

The manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). At this initial stage of litigation, Plaintiff has sufficiently alleged the requirements of standing. Plaintiff alleges that he is a person with a disability who uses a service animal, Chief Wiggum, to perform tasks that assist him with his activities of daily living. He alleges that he has been barred or banned from using property maintained by the IDNR because the ADA and Illinois law do not consider the pig a service animal. He was injured by the refusal to allow the pig on the properties administered by IDNR because he cannot approach those properties without being harassed by dogs and their owners (because the beaches are marked for dogs only), turned away by security or police due to complaints by the public, or banned because federal and state law do not consider a pig a legal service animal. Moreover, as a resident of Chicago, Plaintiff intends to return to these locations throughout Cook County with a service pig. He has provided sufficient factual allegations to plausibly state a cause of action for relief pursuant to the ADA.

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton,* 405 U.S. 727, 731-32 (1972). The question whether the litigant is a 'proper party to request an adjudication of a particular issue,' is one within the power of Congress to determine." *Sierra Club*, 405 U.S. at 732 n.3 (1972) (citing *Flast v. Cohen*, 392 U.S. 83, 100 (1968)). When private enforcement suits "are the primary method of obtaining compliance" with a civil rights act, such as the ADA, courts must take a "broad view of constitutional standing." *Doran v. 7- Eleven, Inc.,* 524 F.3d 1034, 1039 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972)).

### III. PLAINTIFF'S COMPLAINT STATES A VALID CLAIM PURSUANT TO THE FIRST AMENDMENT AND RLUIPA

IDNR adopts the arguments made by Defendants City of Chicago and Chicago Park District in their briefs regarding RLUIPA. Doc. 55, at 6. Plaintiff hereby adopts the arguments he made in opposition to the Defendants' motions to dismiss the RLUIPA claim.

### CONCLUSION

Plaintiff has stated a well-pleaded complaint pursuant to Rule of Civil Procedure 8 and Plaintiff met his burden of establishing standing. Plaintiff respectfully requests that the Court deny IDNR's Motion to Dismiss on these grounds.

Respectfully submitted this 6th day of March, 2019.

*/s/Kenneth Mayle*
Plaintiff Pro Se

12

**CERTIFICATE OF SERVICE**

 I hereby certify that the forgoing pleading was served on all Defendants via the Court's E.C.F. system on March 6, 2019.

*/s/Kenneth Mayle*
Plaintiff Pro Se
