IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MAYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18 C 6211 |
| | ) | |
| CHICAGO PARK DISTRICT; | ) | Judge Harry D. Leinenweber |
| ILLINOIS DEPARTMENT OF | ) | |
| NATURAL RESOURCES, DIVISION | ) | |
| OF PARKS AND RECREATION; | ) | |
| U.S. ATTORNEY GENERAL | ) | |
| WILLIAM BARR, in his | ) | |
| official capacity; and | ) | |
| CITY OF CHICAGO; | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS CITY OF CHICAGO AND CHICAGO PARK DISTRICT'S
MOTION FOR RECONSIDERATION**

Defendant City of Chicago ("City"), by and through its attorney, Mark A. Flessner, and Defendant Chicago Park District ("Park District"), by and through its attorney, Christina L. Rosenberg, respectfully move, pursuant to Federal Rule of Civil Procedure 54(d) and the Court's inherent power, for partial reconsideration of the Court's order of July 2, 2019. In support of this motion, the City and Park District ("Defendants") state as follows:

**BACKGROUND**

1. Plaintiff Kenneth Mayle filed his *pro se* complaint on September 11, 2018. Plaintiff alleged that various public and private establishments had prohibited him from bringing his Guinea Hog, named "Chief Wiggum," on their premises. Plaintiff sued various governmental entities, asserting claims for violation of Title II of the Americans with Disabilities Act ("ADA"), the Illinois Human Rights Act ("IHRA"), the Fourteenth Amendment's equal

1

protection clause, the First Amendment's free exercise clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

2. On November 13, 2018, Defendants the United States Attorney General ("USAG") and Cook County Animal Control ("Animal Control") separately moved to dismiss the claims asserted against them. Dkt. Nos. 19, 22. Plaintiff responded to those motions on December 13, 2018. Dkt. No. 29. Animal Control filed a reply brief on January 7, 2019. Dkt. No. 43. On February 1, 2019, Defendants City, Park District, and Illinois Division of Natural Resources ("IDNR") also filed separate motions to dismiss the claims against them. Dkt. Nos. 48, 51, 54. The Court granted Plaintiff 28 days to respond to those motions and set no date for reply briefs. Dkt. No. 57. Plaintiff filed a response to Defendant IDNR's motion to dismiss, Dkt. No. 61, but filed no response to the City's or Park District's motions.

3. On July 2, 2019, the Court ruled on all Defendants' motions to dismiss. Dkt. No. 64. The Court dismissed all counts of the Complaint against all Defendants except for Plaintiff's claim under Title II of the ADA with respect to the City and Park District.

4. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Department of Justice ("DOJ") has issued regulations implementing Title II of the ADA, including 28 C.F.R. § 35.136, which generally requires a public entity to "modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." DOJ defines "service animal" as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. §

35.104. Under DOJ's definition, "[o]ther species of animals, whether wild or domestic, trained or untrained, are not service animals." *Id.*

5. Plaintiff's Complaint contains a single count for violation of the ADA. In that count, Plaintiff asserts that "Defendant[]s' refusal to consider Chief Wiggum a service animal discriminated against Plaintiff bas[ed] on his disability," Compl. ¶ 133, and that "Defendants' refusal to treat Chief Wiggum as a service animal violates Title II of the [ADA]," *id.* ¶ 137.

6. Though the Court agreed with Defendants that Chief Wiggum is not a service animal under the ADA, the Court interpreted Plaintiff's Complaint as also asserting an independent ADA accommodation claim that the Court believed the City and Park District failed to address. Specifically, the Court noted that Plaintiff "also appears to allege that denial of his Guinea Hog is a violation of the public entities' responsibility to provide reasonable accommodations to people with disabilities under the ADA." Dkt. No. 64 at 9. In support of this claim, the Court cited Title III of the ADA, which applies only to private entities. *Id.* (citing 42 U.S.C. § 12182(b)(2)(A)). The Court concluded that, by "merely argu[ing] that [Plaintiff] is not entitled to the Guinea Hog as a reasonable accommodation because it is not a service animal," the City and Park District had "improperly merged Mayle's claim challenging DOJ's regulations defining service animals with his claim that he is entitled to a reasonable accommodate in the form of being allowed to take his Guinea Hog into the public spaces that the City and Park District administer." *Id.* at 10–11.

## ARGUMENT

7. Because the Court's ruling on Defendants' motion to dismiss did not dispose of Count I with respect to the City and the Park District, it is a non-final, interlocutory order. District courts have inherent authority to reconsider and revise interlocutory orders prior to final

judgment. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *see also* Fed. R. Civ. P. 54(d) (non-final orders "may be revised at any time before the entry of a [final] judgment"). A court "may grant [a] motion[] for reconsideration 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Dahlstrom v. Sun-Times Media, LLC*, 346 F. Supp. 3d 1162, 1167 (N.D. Ill. 2018) (Leinenweber, J.) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). Reconsideration "allows the court to correct its own errors and avoid unnecessary appellate procedures." *Id.* A motion for reconsideration serves a valuable purpose "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

8. Defendants respectfully submit that it was a manifest error of law to conclude that Plaintiff could state a claim under the ADA for failure to accommodate the use of an animal that is not a service animal. As discussed below, ADA regulations require a public entity to modify its policies, procedures, or practices to allow a disabled individual's use of an animal *only if the animal qualifies as a service animal*. That is, where a disabled individual's request for accommodation is a request to use an animal, a plaintiff cannot state a claim for reasonable accommodation unless the animal at issue meets the ADA's "service animal" definition.

9. This Court correctly concluded that Plaintiff's Guinea Hog is not a service animal; that conclusion should have resulted in the dismissal of Plaintiff's ADA claim in its entirety. The Court's conclusion that Plaintiff could state a claim for failure to accommodate a non-service animal is directly at odds with the ADA's regulations, DOJ's interpretation of those regulations, and the body of case law applying those regulations, and thus constitutes a "manifest

error of law." Defendants also respectfully submit that reconsideration is particularly appropriate here because the Court's decision was made "outside the adversarial issues presented" by the parties. In support of their motions to dismiss, Defendants did cite cases in which courts dismissed ADA claims for accommodation of animals because the animals did not qualify as service animals. Yet Defendants did not read Plaintiff's Complaint to be asserting a claim for reasonable accommodation apart from his claim that his Guinea Hog qualifies as a service animal, and Plaintiff did not advance this argument in any brief he submitted. Thus Defendants did not have the opportunity to address directly the question of whether a public entity has any obligations under the ADA to accommodate animals that are not service animals. As discussed in greater detail below, the answer to that question is clearly "no." Defendants therefore respectfully request that the Court reconsider its July 2, 2019 ruling denying Defendants' motions to dismiss with respect to Plaintiff's claim under Title II of the ADA. *See* Dkt. No. 64 at 6–11.

**A.      The ADA Does Not Require Accommodation Of Non-Service Animals.**

10.     That public entities have no obligation under Title II of the ADA to provide reasonable accommodations for animals that are not service animals is clear from the regulations implementing Title II. Those regulations provide that "a public entity shall modify its policies, practices, or procedures to permit the use of *a service animal* by an individual with a disability." 28 C.F.R. § 35.136 (emphasis added). And in the appendix to those regulations, DOJ—the agency that administers the ADA—provides commentary reflecting its own understanding that the ADA does not require public entities to modify policies, practices, or procedures to permit the use of animals that are not service animals. *See* DOJ, Nondiscrimination on the Basis of Disability in State and Local Government Services, 75 FR 56164-01 (as codified at 28 C.F.R. §

Pt. 35, App. A), 2010 WL 3561889 at *56192 (explaining that exclusion of non-canine animals from definition of "service animal" will deter individuals' attempts to use "*other animals not qualified as service animals*") (emphasis added); *id.* at *56194 (noting that individuals seeking "to request a reasonable modification of the State or local law" to allow them to keep animals other than service animals in their homes "*must do so under the [Fair Housing Act], not the ADA*") (emphasis added); *id.* at *56195 ("[DOJ] recognizes that there are situations not governed by the title II and title III regulations, particularly in the context of residential settings and transportation, where there may be a legal obligation to permit the use of animals that do not qualify as service animals under the ADA . . . . Public officials, housing providers, and others who make decisions relating to animals in residential and transportation settings should consult the Federal, State, and local laws that apply in those areas (e.g., the FHAct regulations of HUD and the ACAA) *and not rely on the ADA* as a basis for reducing those obligations.") (emphasis added). In a position statement filed in a case in another district, DOJ provided additional clarity, stating expressly that its regulations provide for circumstances where "requiring public entities to permit [animal] use *would not be reasonable*." Statement of Interest of the United States of America in *Alboniga v. School Bd. of Broward Cty., Fla.*, 87 F. Supp. 3d 1319 (S.D. Fla. 2015) (attached hereto as Exhibit A), at 4 (emphasis added). Those circumstances include where the animal at issue is not a dog. *See* 28 C.F.R. § 35.136.

11. Thus, on the question of when it is reasonable to require public entities to accommodate animals in public facilities, DOJ has already weighed the relevant policy considerations in its development of the service animal regulations and it decision to restrict the definition of service animals to dogs. In doing so, the agency specifically determined that restricting the species of animals a public entity might be required to admit to its facilities as a

reasonable accommodation "will provide greater predictability for state and local government entities as well as added assurance of access for individuals with disabilities who use dogs as service animals." *See* 75 FR 56164-01, 2010 WL 3561889, at *56193. *See also* Ex. A at 2 ("The [service animal] regulation . . . presents [DOJ's] holistic view of when it is reasonable (and conversely, unreasonable) to require public entities to permit the use of service animals."). And thus allowing ADA claims for failure to reasonably accommodate animals of any species—like Plaintiff's Guinea Hog—would undermine DOJ's stated goal of providing predictability and assurance to public entities.

12. Courts interpreting the ADA and its regulations have also consistently recognized that public entities have no obligation under Title II—and private entities have no obligation under Title III—to modify their policies, practices, or procedures to reasonably accommodate an animal unless that animal qualifies as a service animal. *See Baughman v. City of Elkhart, TX*, No. 6:17-CV-326, 2018 WL 1510678, at *8 (E.D. Tex. Mar. 27, 2018) (denying ADA reasonable accommodation claim for individual's request to keep lemur in her home because lemur was not a service animal and noting that "[t]he ADA is more restrictive than the [Fair Housing Amendments Act]," which *does* allow reasonable accommodation claims involving non-service animals); *Maubach v. City of Fairfax*, No. 1:17-CV-921, 2018 WL 2018552, at *6 n.6 (E.D. Va. Apr. 30, 2018) (noting that where animal is merely an emotional support animal and not a service animal, "a disabled person has no entitlement [under the ADA] to use the emotional support animal in public accommodations or in connection with public services."); *Davis v. Ma*, 848 F. Supp. 2d 1105, 1116 (C.D. Cal. 2012) ("The ADA does not create unlimited license for disabled customers to enter facilities of public accommodation with their pets. The *federal regulations limit protected entry to trained service animals* that help ameliorate their

owner's qualifying disability.") (emphasis added), *aff'd*, 568 F. App'x 488 (9th Cir. 2014); *Rose v. Springfield-Greene Cty. Health Dep't*, 668 F. Supp. 2d 1206, 1216 (W.D. Mo. 2009) ("[T]he Court finds that Plaintiff's monkey is not a service animal, *and therefore the Defendants did not violate any provision of the ADA* by disallowing Plaintiff to enter any establishment with her monkey.") (emphasis added), *aff'd sub nom. Rose v. Cox Health Sys.*, 377 F. App'x 573 (8th Cir. 2010); *see also Anderson v. City of Blue Ash*, 798 F.3d 338, 354 (6th Cir. 2015) (concluding that miniature horse constituted service animal under ADA while noting that "[c]ourts have typically found that to qualify for a reasonable modification, an animal must be [a service animal]").[1]

13. This Court appropriately noted that a Guinea Hog cannot be a service animal under the ADA and also found that Plaintiff's Guinea Hog "assists in and performs emotional support tasks" and that "Mayle has failed to plead sufficient facts of how the Guinea Hog's performance of such tasks assist with this disability." Dkt. No. 64, at 9. Thus, the Court correctly concluded that Chief Wiggum is not a service animal, either by its species classification or its function. *Id.* at 8–9. That conclusion should have ended the analysis and resulted in the dismissal of Plaintiff's ADA claim in its entirety. The Court, however, proceeded to conduct additional analysis, finding that Plaintiff had stated a claim under the ADA for "failure to accommodate" his pig as an emotional support animal because "failure to accommodate is an independent basis for liability under the ADA." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee* ("*WCS*"), 465 F.3d 737, 751 (7th Cir. 2006). But the court in *WCS* simply held that "failure to accommodate" can be a basis for ADA liability independent of allegations of disparate impact or disparate treatment. *Id.* at 753. *WCS* was a zoning case about the location of mental health clinics; it was not a case about accommodating animals at all. The court therefore

---

[1] Even Plaintiff himself appears to recognize that he has no reasonable accommodation claim under the ADA if Chief Wiggum does not qualify as a service animal. *See* Dkt. No. 29 at 17 ("The current rules limit reasonable accommodations to service animals . . . .").

8

said nothing about whether there can be independent ADA liability for "failure to accommodate" the use of animal when the animal is not a service animal, and is merely an emotional support animal. As discussed above, under DOJ regulations implementing Title II, as recognized by long-standing case law, there is no such independent basis for liability under the ADA.

14. Defendants respectfully submit that reconsideration is appropriate in this case not only because the Court's decision rested on a legal error but also because the decision was made "outside the adversarial issues presented to the Court by the parties." Defendants did not have the opportunity to address directly the question of whether a public entity ever has an obligation under the ADA to accommodate animals that are not service animals.

15. Neither the Park District nor the City interpreted Plaintiff's Complaint to be asserting an ADA accommodation claim apart from his assertion that his Guinea Hog should be treated as a service animal. As Plaintiff plainly stated in the Complaint, it was "Defendants' *refusal to treat Chief Wiggum as a service animal* [that allegedly] violate[d] Title II." Compl. ¶ 137 (emphasis added). And Plaintiff's factual allegations regarding his ADA claim also did not put the City and Park District on notice that he was asserting any reasonable accommodation claim apart from his claim that his pig should be treated as a service animal. Plaintiff's complaint contains 17 pages and over 80 paragraphs of background and factual allegations that pertain just to the ADA claim; those allegations focus on the claim that a Guinea Hog should be classified as a service animal. *See* Compl. ¶¶ 11-32, 63-67, 70-80, 85-92. Nowhere, for example, does Plaintiff assert that he requested any specific "accommodation" from the City or the Park District apart from his claim that Chief Wiggum should be considered a service animal.

16. Further, nothing in the briefs Plaintiff submitted in response to Animal Control's and IDNR's motions to dismiss put Defendants on notice that Plaintiff was advancing any claim

for reasonable accommodation apart from his claim that Chief Wiggum should be treated as a service animal. As stated above, Plaintiff submitted no brief in response to the City's or Park District's motions. And his responses to Defendants Animal Control and IDNR, with respect to his ADA claim, focus only on whether Chief Wiggum should be considered a service animal under the ADA. *See* Dkt. No. 29 at 13–18; Dkt. No. 61 at 9.

17. Finally, Defendants did not understand Plaintiff to be asserting a claim for reasonable accommodation of an animal that is not a service animal because, as discussed above (and as noted in the City's brief, Dkt. No. 52 at 6), no such claim exists under Title II of the ADA. An ADA reasonable accommodation claim based on a disabled individual's desire to use an animal for assistance is cognizable only if the animal meets ADA's definition of service animal. Under that framework, Plaintiff's ADA claim must be dismissed because, as the Court has already concluded, Chief Wiggum is not a service animal.

**B.     Plaintiff Has Not Alleged Basic Elements Of A Reasonable Accommodation Claim.**

18. In any event, even if Title II of the ADA could be construed to allow a claim for failure to reasonably accommodate requests to use emotional support animals, Plaintiff has not alleged such a claim here. As the Court recognized in its ruling, a plaintiff bringing a Title II claim must allege one of the following: "(1) the defendant intentionally acted on the basis of disability, (2) the defendant refused to provide a reasonable accommodation, or (3) the defendant's rule disproportionally impact disabled people." Dkt. 64 at 10 (citing *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). In addition, to state a reasonable accommodation claim, a plaintiff must allege, among other things, that the requested modification is necessary for the disabled individual. *See* Dkt. 64 at 10 (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 638 (2001).

19.     Yet Plaintiff alleges none of these elements here. There is no allegation in the Complaint that Defendants intentionally discriminated on the basis of disability or that their general rules concerning animals in public facilities disproportionally impact disabled people. And nowhere does Plaintiff allege that he ever made any actual request for a reasonable accommodation that the City and the Park District refused. Plaintiff does not even allege that he informed any City or Park District employee that he had a disability. With respect to the City and Park District, Plaintiff either alleges that other patrons of City parks or beaches—that is, *not* Park District or City employees—"aggressively ridiculed or harassed Plaintiff," Compl. at ¶¶ 46, 48, or simply that he was kicked out of Millennium Park (which is operated by the City of Chicago) and ejected from other parks and beaches (which are operated by the Park District), *id.* ¶¶ 50–51. It cannot be inferred from these allegations that Plaintiff ever requested a reasonable accommodation on account of any disability or that the City or Park District refused such a request.

20.     And even if Plaintiff had requested some specific accommodation, he has failed to allege—even in conclusory fashion—that having his Guinea Hog with him is *necessary* to allow him meaningful access to the public facilities he wishes to access. He does not allege, for example, that he cannot meaningfully access Millennium Park or the City's other parks and beaches unless he is accompanied by his Guinea Hog. The only factual allegations are that Chief Wiggum offers emotional support by massaging him and accompanying him on his bike rides. But these supportive activities do not pertain to accessing Chicago's parks and beaches.

21.     Thus, even if Title II could be construed to allow a reasonable accommodation claim with respect to animals like Chief Wiggum, Plaintiff has failed to allege the basic elements of such a claim here.

11

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court reconsider that portion of its July 2, 2019 order that denied Defendants' motion to dismiss with respect to Count I of Plaintiff's Complaint, grant Defendants' motion to dismiss Plaintiff's Complaint in its entirety, and grant Defendants such further relief as the Court deems just and appropriate.

Date: July 25, 2019

CHRISTINA L. ROSENBERG,
Counsel for the Chicago Park District

By: /s/Christina L. Rosenberg

Heather L. Keil – Senior Counsel
Christina L. Rosenberg - Counsel
Chicago Park District
541 N. Fairbanks, 3rd Fl.
Chicago, IL 60611
312.742.4609 / 4720
Heather.Keil@chicagoparkdistrict.com
Christina.Rosenberg@chicagoparkdistrict.com
CPDlawnotices@chicagoparkdistrict.com
Attorneys for Defendant Chicago Park District

Respectfully submitted

MARK FLESSNER,
Corporation Counsel for the City of Chicago

By: /s/ Justin Tresnowski

Justin Tresnowski
Assistant Corporation Counsel
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-4216
Attorney for Defendant City of Chicago