# Exhibit A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 0:14-CV-60085-BB

|  |  |
|---|---|
| MONICA ALBONIGA, individually and on behalf of A.M., a minor, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, | ) ) ) ) |
| Defendant. | ) ) ) |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

WIFREDO A. FERRER
United States Attorney
VERONICA HARRELL-JAMES
Assistant United States Attorney
Southern District of Florida
99 N.E. Fourth Street, 3rd Floor
Miami, Florida 33132
(305) 961-9327
veronica.harrell-james@usdoj.gov

VANITA GUPTA
Acting Assistant Attorney General
EVE L. HILL
Deputy Assistant Attorney General
REBECCA B. BOND
Chief
KATHLEEN P. WOLFE
Special Litigation Counsel
ROBERTA S. KIRKENDALL
Special Legal Counsel
PEARLINE M. HONG
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, D.C. 20530
(202) 307-0663
pearline.hong@usdoj.gov

January 26, 2015

*Counsel for the United States of America*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

INTEREST OF THE UNITED STATES ..................................................................................... 2

REGULATORY BACKGROUND ............................................................................................... 3

DISCUSSION ................................................................................................................................ 5

    I.     THE REGULATION IS A PERMISSIBLE CONSTRUCTION OF THE
          ADA THAT IS ENTITLED TO DEFERENCE ...................................................... 5

    II.    THE SERVICE ANIMAL PROVISION IS A SPECIFIC APPLICATION
          OF THE REASONABLE MODIFICATIONS REQUIREMENT ....................... 10

CONCLUSION ............................................................................................................................ 12

**PRELIMINARY STATEMENT**

This dispute arises out of defendant School Board of Broward County, Florida's ("the School Board") alleged failure to accommodate plaintiffs Monica Alboniga and her six-year old son, A.M.'s, requests relating to A.M.'s use of his service animal at school. The parties raise a host of issues in their respective motions for summary judgment, but the United States Department of Justice ("the Department") files this Statement of Interest solely to address and correct the School Board's assertions about the proper construction of 28 C.F.R. § 35.136, the service animal provision of the regulation implementing Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. That provision provides, in part: "Generally, a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a). In its motion for summary judgment, the School Board contends that (1) the Department exceeded its statutory authority in promulgating the service animal provision, and (2) the provision is inconsistent with, and impermissibly stricter than, the regulatory provision requiring that public entities make reasonable modifications to avoid discrimination on the basis of disability.[1] (*See* Def.'s Mot. at 2-3, 9-11.)[2]

In raising this challenge, the School Board fundamentally misunderstands the Title II regulation. A product of the Department's thorough and considered evaluation of how best to implement the ADA's objective of eliminating all forms of discrimination against individuals

---

[1] The School Board uses the phrase "reasonable accommodation" when referring to the regulation's reasonable modifications requirement. Because the regulation uses the word "modification[]," *see* 28 C.F.R. § 35.130(b)(7), this memorandum employs the phrase "reasonable modification," rather than "reasonable accommodation."

[2] References to "Def.'s Mot." are to Defendant School Board's Motion for Summary Judgment [No. 37], filed December 28, 2014.

with disabilities, the regulation establishes that public entities "[g]enerally" must permit individuals with disabilities to be accompanied by their service animals. 28 C.F.R. §§ 35.136. Outlining the contours of this rule, the regulation enumerates, *inter alia*, particular circumstances when the general requirement does not apply. The regulation thus presents the Department's holistic view of when it is reasonable (and conversely, unreasonable) to require public entities to permit the use of service animals. Far from being contrary to, or imposing greater obligations than, the regulation's reasonable modifications provision, the service animal provision *specifically applies* the reasonableness inquiry.

Since the ADA's inception almost twenty-five years ago, the Department has interpreted the ADA's application to service animals in this fashion. Consistent with the ADA's goals of integrating persons with disabilities and respecting their autonomy and self-determination, *see* 42 U.S.C. § 12101(a)(7), this regulatory framework furthers Congress's intent that individuals with disabilities not be separated from their service animals, while simultaneously ensuring that public entities, such as the School Board, can exclude service animals when appropriate. As the federal agency charged with primary responsibility for enforcing the ADA and its implementing regulations, the Department's views are entitled to deference. Accordingly, the United States respectfully submits this Statement of Interest to clarify the regulation's proper construction and application.[3]

## INTEREST OF THE UNITED STATES

Under 28 U.S.C. § 517, the Attorney General may send any officer of the United States Department of Justice "to attend to the interests of the United States in a suit pending in a court

---

[3] The United States takes no position on any other issues currently before the Court and does not intend to attend any hearing on the parties' motions for summary judgment unless the Court should so require.

2

of the United States . . . ." The Department is the federal agency charged with primary responsibility for enforcing Title II of the ADA and its implementing regulation. *See* 42 U.S.C. § 12188(b). Consistent with this statutory charge, the Department has an interest in, *inter alia*: (1) supporting the ADA's proper interpretation and application; (2) furthering the statute's explicit Congressional intent to provide clear, strong, consistent, and enforceable standards addressing discrimination against individuals with disabilities; and (3) ensuring that the United States plays a central role in enforcing the standards established in the ADA. *See id.* § 12101(b).

These interests are particularly strong here, where the School Board has called into question the Department's authority to promulgate the Title II regulation.

## REGULATORY BACKGROUND

Implementing Title II's broad mandate that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, the service animal provision of the Department's Title II regulation requires that public entities, such as the School Board, generally permit individuals with disabilities to use their service animals. 28 C.F.R. § 35.136(a). Providing specific guidance with respect to assorted issues that may arise in the application of this rule, the provision sets forth, among other things: the nature of the permissible inquiries a public entity may make about an individual's use of a service animal (§ 35.136(f)); the requirement that individuals with disabilities be permitted to be accompanied by their service animals "in all areas of a public entity's facilities where members of the public, participants in services, programs or activities, or invitees . . . are allowed to go" (§ 35.136(g)); and the general prohibition against requiring individuals who use service animals to pay a surcharge or to comply with requirements generally

3

not applicable to people without pets (§ 35.136(h)). Read as a whole, these and other subsections of the service animal provision present the Department's comprehensive view of how public entities should address the myriad issues that may arise in the service animal context.

This view of course would not be comprehensive, however, without a consideration of the circumstances in which it would be *unreasonable* to require public entities to allow the use of service animals. The regulation accordingly enumerates specific exceptions to the general rule. These exceptions, set forth at 28 C.F.R. §§ 35.104, 35.130(b)(7), 35.136(b), and 35.139, establish that while allowing individuals with disabilities to use their service animals *generally* is reasonable (*i.e.*, reasonable in the run of cases), there are certain circumstances when requiring public entities to permit their use would not be reasonable. As an initial matter, the general requirement applies only to dogs that are "individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 35.104 (definition of "service animal"). Further, a public entity need not allow an individual to use his service animal if it would fundamentally alter the nature of the entity's service, program, or activity, or if it would pose a direct threat to the health or safety of others. *Id.* §§ 35.130(b)(7), 35.139; *see* 28 C.F.R. pt. 35, app. A § 35.104 at 600; *id.* § 35.136 at 608 (July 1, 2014). And a service animal may be properly excluded if it "is out of control and the animal's handler does not take effective action to control it," or if the animal "is not housebroken." 28 C.F.R. § 35.136(b).[4]

The Department has consistently interpreted the ADA to require that public entities permit individuals with disabilities to use their service animals, subject to these exceptions. This

---

[4] The Department's regulatory Guidance illustrates the application of these exceptions by discussing examples of circumstances in which a public entity would not be required to permit use of a service animal. *See, e.g.*, 28 C.F.R. pt. 35, app. A § 35.104 at 600 (July 1, 2014) (animals trained to provide aggressive protection); *id.* at 602 (wild animals); *id.* at 603 (nonhuman primates); *id.* § 35.136 at 610 (operating rooms and burn units).

4

was the Department's view long before it promulgated the service animal provision, and it remains the Department's view today.[5]

## DISCUSSION

### I.

### THE REGULATION IS A PERMISSIBLE CONSTRUCTION OF THE ADA THAT IS ENTITLED TO DEFERENCE

The Department's regulation interpreting Title II is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1179 (11th Cir. 2003) (deferring to the Department's regulation implementing Title II of the ADA); *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822-23 (11th Cir. 1998) (same).[6] Under *Chevron*, an agency's interpretation of its governing statute is entitled to judicial deference unless "Congress has directly spoken to the precise question at issue." 467 U.S. at 842. Thus, where (as here),

---

[5] The Department has articulated this view not only in its regulations and regulatory Guidance, but also in technical assistance documents, amicus briefs, and through its enforcement efforts. *See, e.g.*, U.S. Dep't of Justice, Revised ADA Requirements: Service Animals at 1 (2011) ("Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."); U.S. Dep't of Justice, The ADA Best Practices Tool Kit for State & Local Governments, Chapter 7 Addendum 1: Title II Checklist (Emergency Management) at 18 (2007) (Title II entities should "modify 'no pets' policies to allow people with disabilities to stay in shelters . . . with their service animals"); *id.*, Chapter 1: ADA Basics at 9 (2006) (providing, as example of a reasonable modification, "[p]ermitting a service animal in a place where animals are typically not allowed, such as a cafeteria or a courtroom"); Settlement Agreement Between United States & Delran Township School Dist. (June 24, 2014); Brief as Amicus Curiae, *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1994); *cf.* Title III Tech. Assistance Manual § III-4.2300 (1994); Consent Decree, *United States v. Larkin, Axelrod, Ingrassia & Tetenbaum, LLP*, 11-cv-8003 (S.D.N.Y. June 28, 2012).

[6] *Cf. Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, . . . to render technical assistance explaining the responsibilities of covered individuals and institutions, . . . and to enforce Title III in court, . . . the Department's views are entitled to deference.") (citing *Chevron*, 467 U.S. at 844).

5

"Congress has explicitly left a gap for the agency to fill," the agency's regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843-44. The question for the court is whether the agency's regulation is based on a "permissible" construction of the statute. *Id.* at 843.

This is a highly deferential standard. To uphold the agency's interpretation of a statute, a court need not conclude that the agency's interpretation is the best interpretation, *see Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967, 980 (2005), or the "most natural one," *see Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991)—but simply that it is permissible.

Nowhere does Title II of the ADA explicitly address the issue of service animals or how to assess the reasonableness of requiring public entities to make modifications to allow for their use. Because Congress has not directly spoken on the issue, the Department's regulation is entitled to deference unless it is arbitrary, capricious, or manifestly contrary to the ADA. Here, the School Board has provided no basis to conclude that the regulation impermissibly construes the ADA. Nor could it.

Honoring the individual's choice to be accompanied by his service animal in all aspects of community life, including at school, the regulation is a reasonable construction of the ADA because it promotes the statute's overarching goals of ensuring equal opportunity for, and full participation by, individuals with disabilities in all aspects of civic life. *See* 42 U.S.C. § 12101(a)(3) (noting that discrimination persists in education); *id.* § 12101(a)(7) (ADA's goals "are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency"); *see Bledsoe*, 133 F.3d at 821 (purpose of title II is to "continue to break down barriers to the integrated participation of people with disabilities") (quoting H.R. Rep. No. 101-

6

485(II), at 49-50 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 445, 472-73). The regulation fulfills these statutory goals by carrying out Congress's direction that the ADA not merely prohibit *outright* discrimination, but that it go further to require "modifications to existing facilities and practices" to accommodate individuals with disabilities. *Id.* § 12101(a)(5); *see Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999) ("Congress had a more comprehensive view of the concept of discrimination advanced in the ADA.").

The ADA's legislative history confirms that Congress specifically intended that individuals with disabilities not be separated from their service animals, including in schools. *See* 135 Cong. Rec. D956 (1989) (statement of Sen. Simon) (use of service animals is "protected by the [ADA], in public accommodations as well as public services (including schools)").[7] The regulation gives full force to this intent by providing "the broadest feasible access . . . to service animals," permitting their exclusion only "in rare circumstances." 28 C.F.R. pt. 36, app. C § 36.302 at 916 (July 1, 2014) (discussing Title III regulation's service animal provision); *see id.* pt. 35, app. A § 35.136 at 607 (Title II regulation's service animal provision was intended to retain scope of its Title III counterpart). This comports with Congress's recognition that because "[a] person with a disability and his . . . [service] animal function as a unit," involuntarily separating the two generally "[is] discriminatory under the [ADA]." 135 Cong. Rec. D956 (statement of Sen. Simon); *see Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1087 (N.D. Cal. 2013) (separating an individual from his service animal can cause irreparable harm and deprive that individual of independence).

---

[7] *See also* H.R. Rep. No. 101-485(II), at 106 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 389 ("Refusal to admit [a] dog . . . is tantamount to refusing to admit the person who is in need of the dog."); 28 C.F.R. Pt. 36, app. C § 36.302 at 916 (July 1, 2014) (Congress intended that "individuals with disabilities are not separated from their service animals").

7

The School Board may believe the other steps it has taken to accommodate A.M. are sufficient (Def.'s Mot. at 15), but it is not for the School Board to survey the universe of possible accommodations or modifications and determine for A.M. the best, or most "reasonable" (from its perspective) approach. Rather, as Congress has made clear, the ADA is designed to respect the choices of individuals with disabilities and ensure their ability to live independently. *See Hearing Before the S. Comm. on Labor & Human Resources*, 101st Cong. 188 (1989) (statement of Sen. Harkin) ("[P]eople with disabilities are entitled to lead independent and productive lives, to make choices for themselves, and be integrated and mainstreamed into society."); *see also Tennessee v. Lane*, 541 U.S. 509, 538 (2004) (Ginsburg, J., concurring) (ADA is Congress's "barrier-lowering, dignity-respecting national solution"). As such, the Department's Title II regulation requires that public entities administer their services, programs, and activities "in the most integrated setting" appropriate to the needs of individuals with disabilities, and it prohibits public entities from requiring any individual with a disability "to accept an accommodation . . . which the individual chooses not to accept." 28 C.F.R. §§ 35.130(d), (e)(1); *see* 28 C.F.R. pt. 35, app. B § 35.130 at 688 (July 1, 2014) (citing Judiciary Report at 71-72) (the ADA "is not designed to foster discrimination through mandatory acceptance of special services.").[8]

---

[8] The United States takes no position on whether the School Board's provision to A.M. of alternative accommodations complies with the Individuals with Disabilities Education Act ("IDEA") or Section 504 of the Rehabilitation Act, but to the extent the School Board contends that compliance with those statutes per se relieves it of any potential liability under the ADA, its argument should be rejected. *See* 42 U.S.C. § 12201(a) (ADA applies standards greater than or equal to Section 504); 28 C.F.R. § 35.103(a) (same); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098-99 (9th Cir. 2013) (rejecting argument that "the success or failure of a student's IDEA claim dictates, as a matter of law, the success or failure of her [ADA] Title II claim"); *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1282 (10th Cir. 2007) ("[E]ven if plaintiffs conceded that [defendant] fully satisfied its IDEA obligations . . ., they could pursue claims under the ADA . . . .").

8

That the ADA generally requires public entities to permit individuals with disabilities to be accompanied by their service animals has long been the Department's view (*see supra* at pg. 5 n.5)—one that has enjoyed extensive judicial support over the years. Both this Court and the United States Court of Appeals for the Eleventh Circuit have permitted ADA claims to proceed where Title II and III entities have resisted making modifications to allow for service animals. *See, e.g.*, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 (11th Cir. 2007) (defendant's new policy permitting access for service animals did not moot plaintiff's case); *Alejandro v. Palm Beach State Coll.*, 843 F. Supp. 2d 1263, 1269-71 (S.D. Fla. 2011) (relying on Title II regulation's service animal provision to preliminarily enjoin college from preventing plaintiff's access to all areas of campus with her service animal). And even before the Department added the service animal provision to the Title II regulation, courts interpreted the ADA generally to require public entities to allow for service animals. *See, e.g.*, *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (quarantine law denies visually-impaired individuals who depend on guide dogs "meaningful access to state services, programs, and activities"); *Newberger v. Louisiana Dep't of Wildlife & Fisheries*, No. 11-2996, 2012 WL 3579843, at *4 n.6 (E.D. La. Aug. 17, 2012) (public entities have the same legal obligations as public accommodations to make reasonable modifications to allow service animals access); *Pena v. Bexar Cnty., Texas*, 726 F. Supp. 2d 675, 685 (W.D. Tex. 2010) (same); *Rose v. Springfield-Greene Cnty. Health Dep't*, 668 F. Supp. 2d 1206, 1214 n.9 (W.D. Mo. 2009) (same). These authorities confirm that, far from being "arbitrary, capricious, or manifestly contrary" to the ADA, the regulation furthers its goals and is entitled to deference. This Court should likewise so conclude.

9

## II.
## THE SERVICE ANIMAL PROVISION IS A
## SPECIFIC APPLICATION OF THE REASONABLE
## MODIFICATIONS REQUIREMENT

The School Board erroneously reads the regulation's service animal provision to impose an absolute mandate and to ignore the question whether permitting the use of service animals is reasonable. In fact, the provision at issue is a specific application of the regulation's reasonable modifications requirement—one that reflects the Department's regulatory judgment that requiring public entities to make modifications to permit the use of service animals generally is reasonable, subject to specific, enumerated exceptions.

Pursuant to the ADA's mandate that the Attorney General promulgate regulations implementing Titles II and III of the ADA,[9] the Department issued regulations under each title in 1991—both of which contain provisions relating to covered entities' obligations to make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination on the basis of disability. *See* 42 U.S.C. §§ 12134(a), 12186(b); 28 C.F.R. §§ 35.130(b)(7), 36.302. The relevant provision of the 1991 Title II regulation provides, in full: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The 1991 Title II regulation does not discuss specific applications of this provision, such as modifications to permit the use of service animals. *See* 28 C.F.R. pt. 35, app. A § 35.136 at 607 (July 1, 2014).

---

[9] Titles II and III of the ADA prohibit discrimination on the basis of disability by various entities. *See* 42 U.S.C. §§ 12131 *et seq.*, 12181 *et seq.* Title II applies to public entities, while Title III applies to certain private entities and commercial facilities. *See id.*

10

The 1991 Title III regulation contains a virtually identical reasonable modifications provision, but unlike its Title II counterpart, the regulation proceeds to apply the reasonable modifications principle to particular issues, including the use of service animals. *See* 28 C.F.R. § 36.302. The subsection concerning service animals provides that public accommodations "[g]enerally" must modify their policies, practices, or procedures to permit individuals with disabilities to use service animals. *See id.* § 36.302(c)(1).

In 2010, following notice-and-comment rulemaking, the Department issued a revised Title II regulation that "comport[ed] with [its] legal and practical experiences in enforcing the ADA since 1991," *see* 75 Fed. Reg. 56,164, 56,164 (Sept. 15, 2010), including its enforcement of the ADA with respect to the use of service animals in schools and other public facilities. Consistent with its longstanding view that public entities generally must make modifications to permit individuals with disabilities to use their service animals (*see supra* at pg. 5 n.5), the Department added a service animal section (§ 35.136) to the Title II regulation, which mirrors the service animal subsection (§ 36.302(c)) of the Title III regulation's reasonable modifications section. The Department's regulatory Guidance makes clear that, like the Title III regulation, the new service animal provision is subject to the Title II regulation's reasonable modifications provision (§ 35.130(b)(7)):

> [T]itle II entities have the same legal obligations as title III entities to make reasonable modifications in policies, practices, or procedures to allow service animals when necessary in order to avoid discrimination on the basis of disability, unless the entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. pt. 35, app. A § 35.104 at 598-99 (July 1, 2014) (citing 28 C.F.R. § 35.130(b)(7)). Like the Title III regulation, the Title II regulation enumerates numerous exceptions to the general requirement that public entities permit individuals with disabilities to be accompanied by their service animals. Taken together, these exceptions set forth the Department's view—and

11

reflect its expert judgment following notice-and-comment rulemaking—as to when it would be unreasonable to require public entities to make modifications to permit the use of service animals.

Misunderstanding the regulation, the School Board interprets the service animal provision to forego a reasonableness analysis. But as the author of the regulation, the Department submits that its longstanding interpretation (as set forth in its regulatory Guidance, *see id.*)—that the service animal provision directly applies the regulation's reasonable modifications requirement—is entitled to deference. *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 131 S. Ct. 871, 880 (2011) (court must defer to "an agency's interpretation of its own regulation . . . unless that interpretation is 'plainly erroneous or inconsistent with the regulation'") (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

## CONCLUSION

The Title II regulation's service animal provision permissibly implements the ADA's mandate that no individual with a disability shall be subjected to discrimination by any public entity, regardless of whether that discrimination takes the form of blatant mistreatment or, alternatively, a failure to make modifications to existing facilities and practices. Because the Department authored the regulation and has an interest in ensuring the ADA's consistent interpretation and application, the United States respectfully requests that the Court consider the views expressed herein in resolving the School Board's Motion for Summary Judgment.

Dated: January 26, 2015

Respectfully submitted,

WIFREDO A. FERRER
United States Attorney
Southern District of Florida

/s/ Veronica Harrell-James
VERONICA HARRELL-JAMES
Assistant United States Attorney
Southern District of Florida
99 N.E. Fourth Street, 3rd Floor
Miami, Florida 33132
Telephone: (305) 961-9327
Facsimile: (305) 530-7139
veronica.harrell-james@usdoj.gov

VANITA GUPTA
Acting Assistant Attorney General
Civil Rights Division

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KATHLEEN P. WOLFE
Special Litigation Counsel
ROBERTA S. KIRKENDALL
Special Legal Counsel
Disability Rights Section
Civil Rights Division

/s/ Pearline M. Hong
PEARLINE M. HONG
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, D.C. 20530
Telephone: (202) 307-0663
Facsimile: (202) 307-1197
pearline.hong@usdoj.gov

*Counsel for the United States of America*

13

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Statement of Interest of the United States of America was filed with this Court's CM/ECF system on January 26, 2015, and that pursuant thereto, a copy of this document has been served upon the following counsel of record by electronic mail:

>Matthew W. Dietz
>2990 SW 35th Avenue
>Miami, FL 33133
>Telephone: (305) 669-2822
>Facsimile: (305) 442-4181
>mdietz@justdigit.org
>*Attorney for Plaintiffs*

>Marylin C. Batista-McNamara
>Barbara Joanne Myrick
>600 SE 3rd Avenue
>11th Floor
>Fort Lauderdale, FL 33301
>Telephone: (754) 321-2050
>Facsimile: (754) 321-2705
>mcbatista@yahoo.com
>barbara.myrick@browardschools.com
>*Attorneys for Defendant*

>/s/ Pearline M. Hong_____
>Pearline M. Hong
>Trial Attorney
>Disability Rights Section
>Civil Rights Division
>U.S. Department of Justice
>950 Pennsylvania Avenue, N.W. – NYA
>Washington, D.C. 20530
>Telephone: (202) 307-0663
>Facsimile: (202) 307-1197
>pearline.hong@usdoj.gov
>
>*Counsel for the United States of America*