UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH WILLIAM MAYLE,
    Plaintiff,
v.                                                        No. 18 C 6211
CHICAGO PARKS DISTRICT; et. al.          Judge Leinenweber
Defendants.

**Response to Defendants' Motion for Reconsideration**

Plaintiff Kenneth Mayle responds to the Defendants' Motion for Reconsideration and states:

**Introduction**

Since the ADA became law in 1990, there has been an increase in the number of people with disabilities who use service animals to assist them with tasks of daily living. The statute itself does not specifically address the rights of individuals with disabilities to bring their animals to programs or services covered by the ADA. However, the Department of Justice (DOJ) and Department of Transportation (DOT) have adopted regulations addressing assistance animals. These regulations define service animals in a restrictive manner, limiting service animals to dogs and small horses. Defendants assert that Plaintiff has no Title II or Title III claim when he is denied the use of a service animal who does not meet the definition of service animal.

Contrary to the Defendants' assertion, Plaintiff states a claim under both Title II and Title III. There is currently an unconstitutional dichotomy between Title I, II and III, where the ADA permits all sorts of service animals at work but denies that right to individuals with disabilities in the public accommodation realm.

**I.     Reasonable Accommodations Under Title I Can Include Non-Dogs and Emotional Support Animals**

Title I of the ADA applies to discrimination in employment. It is a violation of Title I to fail to hire an otherwise qualified individual with a disability who can perform the essential functions of the job in question with or without reasonable accommodation. In other words, there is an affirmative duty to provide a reasonable accommodation if one exists to allow the individual to perform the job.

Title I employment regulations *do not include* the definition of a service animal that Title II and III use; in fact, the regulations include no definition. Title I requires that the employer and individual with a disability engage in an interactive process discussing the specifics of any accommodation request, including bringing an animal to work. 29 C.F.R. §1630.2(o)(3). Without the specific definition relevant to the other substantive titles of the ADA, employers must consider requests to bring an animal to the workplace under the obligation to provide a reasonable accommodation. This may include allowing emotional support animals or other types of animals that do not meet the strict service animal definition under the Title II and III regulations.

## II. Titles II and III Arbitrarily Exclude Other Animals Performing Other Support Functions

The definition of service animal under DOJ regulations is the same in both Titles II and III.

The current DOJ service animal definition under Titles II and III is:

> Any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability.

28 C.F.R. §35.104; 28 C.F.R. §36.104.

The regulations limit service animals to dogs who can perform certain tasks. These tasks include physical, sensory, psychiatric or intellectual tasks or those that will assist individuals with a mental disability. *Id.*

1

Private transportation systems like airlines or taxis or Ubers are governed by DOT and DOJ regulations. Under the DOT regulations, taxi services cannot refuse to serve people with disabilities who can use a taxi, refuse to assist an individual with mobility devices, or charge people with disabilities more. Service animals as defined by DOJ must be allowed to accompany their handlers. If the individual can ride in the taxi and requires only minimal assistance to do so, the transportation service or taxicab must transport the individual.

DOJ's 2011 guidance applied limitations to the definition of service animals. It states that service animals are "working animals" not household pets and "[d]ogs whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADA." [1] The two limiting aspects of the rule are that only dogs (with one exception) can be service animals and that animals whose role is to provide comfort or support do not count. Plaintiff challenges both restrictions.

- Small Horses

DOJ arbitrarily decided that small horses would be an unstated exception to this rule. According to DOJ,

> Entities covered by the ADA must modify their policies to permit miniature horses where reasonable. The regulations set out four assessment factors to assist entities in determining whether miniature horses can be accommodated in their facility. The assessment factors are (1) whether the miniature horse is housebroken; (2) whether the miniature horse is under the owner's control; (3) whether the facility can accommodate the miniature horse's type, size, and weight; and (4) whether the miniature horse's presence will not compromise legitimate safety requirements necessary for safe operation of the facility.

To allow flexibility in situations where using a horse would not be appropriate, the final rule does not include miniature horses in the definition of "service animal."[2] But before the 2011 rule, DOJ guidelines were less restrictive and covered animals other than dogs and mini-horses.

---

[1] https://www.ada.gov/service_animals_2010.htm
[2] https://www.ada.gov/regs2010/factsheets/title3_factsheet.html

2

DOJ's current regulations state that "*other species of animals*, whether wild or domestic, trained or untrained, *are not service animals* for the purpose of this definition." *See Newberger v. Louisiana Dep't of Wildlife & Fisheries*, 2012 WL 3579843, at *4 (E.D. La. Aug. 17, 2012) (discussing why a monkey which would have qualified as a service animal under the prior definition is now not covered by the definition.) This definition is unconstitutional because it denies Plaintiff the right to a reasonable accommodation. While the work or tasks performed must directly relate to the handler's disability, the ADA does not limit the kind of work or tasks that can be performed. (See Voluntary Compliance Agreement between the United States and Mercy College, available at https://www.ada.gov/mercy_college_sa.html (April 29, 2016)). In the Mercy College case, a security officer had stopped a veteran from going to class with his service animal, on the assumption that service dogs were only appropriate for people who are blind.

Plaintiff is challenging this restriction because it is unconstitutional to restrict service animals to dogs and miniature horses. There is no reason why an exotic animal like a reasonably-sized pig could not meet the definition of service animal and help people with a variety of physical and mental disabilities.

- Emotional or Comfort Animals

Although the DOJ rules recognize that a service animal can perform psychiatric tasks that assist people with mental disabilities, the DOJ distinguishes between psychiatric tasks and emotional comfort or support tasks. This means that therapy animals, for example, are excluded from DOJ's narrow definition of service animal, even if they could satisfy the DOJ's four-factor test that applies to miniature horses. Plaintiff contends it is unconstitutional for DOJ to rule out other animals who could meet the definition of service dog and four-factor test applied to miniature horses. Challenges brought under the ADA regarding service animals are highly fact-specific,

requiring a case-by-case inquiry into the details of the individual's needs as a person with a disability, the services that an animal provides, and the policies, practices, or procedures that give to rise to the alleged discrimination.

Under Title III of the ADA and Illinois law, a service animal is an animal that has been *trained* to perform *work* or *tasks* for the benefit of a person with a disability. Under federal court precedent and the DOJ's regulations, the ADA requires the modification of a "no pets" policy to permit the use of service animals. See 28 C.F.R. § 35.101 *et seq*. (Title II); 28 C.F.R. § 36.101 *et seq*. (Title III). Generally, the rules state that people with disabilities who use service animals are "permitted to be accompanied by their service animals in all areas ... where members of the public ... are allowed to go." 28 C.F.R. § 35.136(g)(Title II); 28 C.F.R. § 36.302(c)(7)(Title III). For instance, plaintiffs who are blind brought a class action lawsuit against Uber when many drivers refused to transport blind individuals who travel with guide dogs. *National Federation of the Blind of California v. Uber Technologies, Inc.*, 103 F.Supp.3d 1073 (N.D. Cal. 2015). Plaintiffs alleged that drivers yelled "no dogs" and stranded them without any transportation. After the court denied Uber's motion to dismiss, the parties settled. The comprehensive settlement required termination of drivers who discriminated against service dogs and comprehensive training about service animals.

The current rules limit reasonable accommodations to service animals, excluding ESA or comfort animals. This does not mean that an animal who has the ability or predisposition to provide certain services cannot be considered a service animal simply because those activities provide comfort. For example, in *Cordoves v. Miami-Dade County*, the plaintiff's service animal, Shiloh, was able to detect when she was about to have a panic attack. Shiloh would react by jumping on or pawing her, nudging her chin, applying a pressurized licking massage, and calling the plaintiff's

4

daughter over to assist. When the plaintiff testified that Shiloh possessed a natural ability to detect and respond to panic attacks, the defendants argued that Shiloh was not individually trained and simply had a predisposition to help. The court disagreed, finding that the plaintiff's daughter had trained Shiloh and that Shiloh's predisposition to perform certain tasks was not a disqualifying factor but rather just had bearing on what kind of individual training was required. *Cordoves v. Miami-Dade County*, 92 F.Supp.3d 1221 (S.D. Fla. 2015). This is especially relevant to Plaintiff's situation because these are similar tasks that Chief Wiggum has been trained to perform, by Plaintiff, to assist Plaintiff with his disabilities. Why does it matter that the tasks are performed by a reasonably-sized swine rather than a dog? That is the ultimate question posed by Plaintiff's lawsuit.

This litigation should move forward so that Plaintiff can demonstrate that Chief Wiggum can meet the definition applicable to miniature horses.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' Motion for Reconsideration and allow the lawsuit to proceed.


/s/Kenneth William Mayle

7/30/2019