**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604



CERTIFIED COPY

Submitted April 29, 2020[*]
Decided April 29, 2020

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

---

No. 19-3208

| | |
|---|---|
| KENNETH MAYLE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 18 C 6211 |
| CITY OF CHICAGO, et al., *Defendants-Appellees*. | Harry D. Leinenweber, *Judge*. |

**O R D E R**

The City of Chicago bars Kenneth Mayle from bringing his emotional-support hog into public places. A regulation under the Americans with Disabilities Act, 42 U.S.C. § 12182, requires that public entities allow "service animals" such as dogs, but not hogs, to accompany people with disabilities. Mayle sued the City and others, alleging that they are violating his rights under the ADA and the Equal Protection

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Case: 1:18-cv-06211 Document #: 83 Filed: 06/23/20 Page 2 of 4 PageID #:469
Case: 19-3208      Document: 00713631612      Filed: 06/22/2020      Pages: 4

No. 19-3208                                                                                    Page 2

Clause. The district court dismissed Mayle's complaint. It correctly reasoned that Mayle did not state a claim under the ADA, and the regulation that excludes hogs as service animals is rational, foreclosing his equal-protection claim. Thus we affirm.

Mayle owns a Guinea hog (named Chief Wiggum) that provides support for his bipolar disorder. (Because we are reviewing a dismissal for failure to state a claim, we take the well-pleaded facts as true. *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 951 (7th Cir. 2020).) Mayle has trained the hog to respond to his anxiety attacks and alleviate his depression by providing him with massage therapy. The hog also encourages Mayle to engage in physical activity, which helps mitigate his mental-health conditions. He secures his hog on his bicycle when he rides it for exercise.

Mayle has been barred from entering public places around Chicago with his hog. These include city beaches (he was ejected from one after swimming with the hog in Lake Michigan), Millennium Park, and Grant Park. Mayle fears the "constant threat of citizen harassment" as people have objected to the animal's presence and called the police to report him after seeing him enter public spaces with the hog.

Mayle sued the City of Chicago and other public entities and officials. As relevant to this appeal, he alleged that his hog should be considered a "service animal" under the ADA, and if it is not, then the ADA's regulation that excludes his hog violates his right to equal protection. After a couple rounds of briefing, the district court granted the defendants' motions to dismiss the ADA and equal-protection claims.

On appeal Mayle argues unpersuasively that he stated a claim under the ADA. Title II of the ADA prohibits public entities from excluding, denying benefits to, or discriminating against someone because of that person's disability. *See* 42 U.S.C. § 12132. Regulations implementing Title II require public entities to make only "reasonable modifications" to their policies, practices, and procedures "to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35.130(b)(7)(i); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006). Generally, this means permitting people with disabilities to use a "service animal." 28 C.F.R. § 35.136. But a service animal is defined as a "dog" or a "miniature horse." *Id.* § 35.104; 136(i)(1). "Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition." *Id.* § 35.104. Thus the ADA's regulations do not require public entities to permit hogs in public spaces.

Case: 1:18-cv-06211 Document #: 83 Filed: 06/23/20 Page 3 of 4 PageID #:470
Case: 19-3208　　Document: 00713631612　　Filed: 06/22/2020　　Pages: 4

No. 19-3208　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

Mayle replies that, although his hog is not a service animal under the regulation, his claim should proceed under the ADA anyway because he has alleged that allowing his hog in public places is reasonable. But this is a legal conclusion, and we are not required to accept it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Moreover, it is contradicted by the regulation specifying that reasonable modifications need *not* include allowing hogs. We will not construe the regulation to leave it "meaningless or superfluous . . ." *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013).

With his ADA claim rendered meritless by the regulation, Mayle challenges the regulation as unconstitutional. He contends that limiting service animals to two species violates his right to equal protection. Mayle observes that under two different laws, Title I of the ADA, 42 U.S.C. § 12112, covering employment, and the Fair Housing Act, 42 U.S.C. § 3601, covering housing, the implementing regulations do not explicitly state which species qualify as service animals. *See* 24 C.F.R. § 100.204; 29 C.F.R. § 1630.2(o).

Mayle's challenge is fatally flawed. We will sustain regulations that, like this one, do not involve a fundamental right or a suspect class so long as they are rational. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009); *United States v. Harris*, 197 F.3d 870, 875 (7th Cir. 1999). If Mayle's complaint reveals a rational basis for the regulation, then his equal-protection claim fails. *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (citing *Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir. 1995)).

Mayle's complaint reveals the rationality of limiting the species of service animals in public spaces. He describes disorder (harassment from those who object to his hog) and disruption (police called to the scene) when he enters public places with his hog. The government has a legitimate interest in maintaining social order and public safety. *See Foxxxy Ladyz Adult World, Inc., v. Vill. of Dix*, 779 F.3d 706, 720 (7th Cir. 2015). It also may legitimately give the public predictability about what animals they may encounter in urban spaces. *See Nondiscrimination on the Basis of Disability in State and Local Government Services*, 75 FR 56164-01 (U.S. Dep't of Justice Sept. 15, 2010) (codified at 28 C.F.R. Pt. 35, App. A), 2010 WL 3561889 (explaining the rationale behind limiting species of service animals in public facilities to avoid confusion caused by "wild, exotic, or unusual species"). Even if the regulations for employment or housing are not as restrictive as those affecting public places, "[t]he Equal Protection Clause allows the State to regulate 'one step at a time, addressing itself to the phase of the problem which seems most acute.'" *Clements v. Fashing*, 457 U.S. 957, 969 (1982) (quoting *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489 (1955)). Accordingly, the regulation is constitutional.

Case: 1:18-cv-06211 Document #: 83 Filed: 06/23/20 Page 4 of 4 PageID #:471
Case: 19-3208     Document: 00713631612     Filed: 06/22/2020     Pages: 4

No. 19-3208                                                                 Page  4

We have reviewed Mayle's other arguments, and none has merit.

AFFIRMED